Chief Judge Fuld.
We are here concerned with the validity, under the United States Constitution, of the religious affiliation *64 requirements of certain statutes (Family Ct. Act, § 116; Social Services Law, § 373; Domestic Relations Law, § 113), enacted in conformity with article VI (§ 32) of our State Constitution.
On December 22, 1969, the petitioners, Robert and Anne Dickens, sought to file an application as adoptive parents with respondent Erie County Department of Social Services. Refused permission to do so by respondent department solely on the ground that they did not have a religious affiliation, they brought this article 78 proceeding for a judgment (1) declaring that the challenged constitutional and statutory provisions offend against certain provisions contained in the Federal Constitution and (2) directing the respondent to immediately “process * * * [their] application as adoptive parents.” The courts below decided that there was no violation of petitioners’ constitutional rights but directed the respondent to accept and process their application. From that determination, the petitioners appeal as of right, urging that the provisions in question “create an establishment of religion” and deny them ‘ ‘ their freedom of religion ’ ’ under the First Amendment and also deny them equal protection of the laws under the Fourteenth Amendment.
Religion has always been a relevant and important, though not controlling, consideration in this State in the placement of children for adoption. Article VI (§ 32) of New York’s' Constitution requires that a child ‘1 shall be committed or remanded or placed [for adoption], when practicable, in an institution or agency governed by persons, or in the custody of a person, of the same religious persuasion as the child. ’ ’ The term, ‘ ‘ when practicable ”, is, we stated in Matter of Maxwell (4 N Y 2d 429, 434), of “ broad content, necessarily designed to accord the trial judge a discretion to approve as adoptive parents persons of a faith different from the child’s in exceptional situations.” (See, also, Matter of Starr v. De Rocco, 29 A D 2d 662, affd. 24 N Y 2d 1011.) In 1970, some years after our decision in Maxwell, the statutes which required religious conformity of child and adoptive parents ‘ ‘ when practicable ’ ’ were broadened (Family Ct. Act, § 116, subd. [g]; Social Services Law, § 373, subd. 7; see, also, Domestic Relations Law, § 113) to provide that such religious “ matching ” in foster care and adoption proceed *65 ings be “ consistent with the best interests of the child ” (L. 1970, cb. 494). Because of its significance and scope, we set forth in full one of those new provisions — subdivision (g) of section 116 of the Family Court Act:
“ (g) The provisions of subdivisions (a), (b), (c), (d), (e) and (f) of this section [which deal with the placing of a child] shall, so far as consistent with the best interests of the child, and where practicable, be applied so as to give effect to the religious wishes of the natural mother, if the child is born out-of-wedlock, or if born in-wedlock, the religious wishes of the parents of the child, or if only one of the parents of an in-wedlock child is then living, the religious wishes of the parent then living. Religious wishes of a parent shall include wishes that the child be placed in the same religion as the parent or in a different religion from the parent or with indifference to religion or with religion a subordinate consideration. Expressed religious wishes of a parent shall mean those which have been set forth in a writing signed by the parent, except that, in a non-agency adoption, such writing shall be an affidavit of the parent. In the absence of expressed religious wishes, as defined in this subdivision, determination of the religious wishes, if any, of the parent, shall be made upon the other facts of the particular case, and, if there is no evidence to the contrary, it shall be presumed that the parent wishes the child to be reared in the religion of the parent.” (Emphasis supplied.)[1]
It is thus apparent, first, that religion is but one of many factors in the placement of a child for adoption and, second, that placement in conformity with ‘ ‘ the religious wishes of the parents of the child,” though desirable, is not mandatory. Indeed, *66 as the Appellate Division observed (37 A D 2d 102, 106), the above-quoted subdivision (g), as well as subdivision 7 of section 373 of the Social Services Law, “ amended the respective statutes * * * to eliminate any requirement that the religious matching provisions be applied mandatorily. ’ ’ Thus, the challenged legislation places primary emphasis on the temporal best interests of the child, although the religious preference of the natural parents remains a relevant consideration.
In dealing with the petitioners’ contention that New York, by Constitution and legislation, has created an establishment of religion, we must bear in mind that “No perfect or absolute separation [of government and religion] is really possible; the very existence of the Religion Clauses is an involvement of sorts ”. (Walz v. Tax Comm., 397 U. S. 664, 670.) A number of criteria have been developed, however, to determine when a law is violative of the Establishment Clause. “ [T]o withstand the strictures of [that] Clause ”, the Supreme Court has observed, ‘ ‘ there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion.” (Abington School Dist. v. Schempp, 374 U. S. 203, 222; see, also, Lemon v. Kurtzman, 403 U. S. 602, 612; Board of Educ. v. Allen, 392 U. S. 236, 243.) More, such legislation “must not foster ‘an excessive government entanglement with religion.’ Walz, supra [397 U. S.], at 674.” (Lemon v. Kurtzman, 403 U. S. 602, 613, supra; see, also, Tilton v. Richardson, 403 U. S. 672, 687.)
Legislation which provides for the placement of a child with adoptive parents of the same religion ‘ ‘ so far as consistent with the best interests of the child, and where practicable ” (Family Ct. Act, § 116, subd. [g]), undoubtedly fulfills a “ secular legislative, purpose” and certainly reflects and preserves a “benevolent neutrality” toward religion. (Walz v. Tax Comm., 397 U. S., at p. 669.) And, just as clearly, the “ matching ’’provisions neither have the “ primary effect ” of advancing or inhibiting religion, (Abington School Dist. v. Schempp, 374 U. S., at p. 222) nor foster an “ excessive government entanglement ” with church interests. (Walz v. Tax Comm., 397 U. S., at p. 674.) Religion has never been an exclusive, or, as above indicated, a controlling, factor in adoption proceedings. The standard contained in the new amendments to the religious con *67 formity provisions—namely, “ the best interests of the child ” — is a flexible one, affording the court a broad discretion in deciding whether a proposed adoption would be best for the child. (See, e.g., In re Adoption of “ E ”, 59 N. J. 36, 46.)
Certainly subdivision (e) of section 116 of the Family Court Act, relied upon by the petitioners, does not support their claim of unconstitutionality. Insofar as relevant, that statute provides that ‘1 The words ‘ when practicable ’ * * * shall be interpreted as being without force or effect if there is a proper or suitable person of the same religious faith * * * as that of the child available * * * 0r * * * if there is a duly authorized * * * society or institution under the control of persons of the same religious faith or persuasion as that of the child, at the time available and willing to assume the responsibility for the custody of or control over any such child.” As indicated in the new subdivision (g) of section 116 of the Family Court Act, subdivision (e) must be deemed to require that the “ religious wishes ” of the natural parent or parents be given effect “ so far as consistent with the best interests of the child ’ ’. And subdivision (g) provides that, in expressing their “religious wishes ”, the parents themselves may authorize the placement of the child with adoptive parents of a different religion, express their “indifference to religion” as a prerequisite to adoption or make religion a “ subordinate consideration.” Accordingly, the court, in applying subdivision (e) in the light of the strictures of subdivision (g), still retains discretion to determine whether a particular placement is in the best interests of the child, taking into account both religious and secular considerations.
Nor is the petitioners’ First Amendment right to the “free exercise of religion” violated by the religious “matching” requirements. They argue that they are forced to choose between their right to profess no religion and their right to adopt because there are many more prospective parents than adoptive children and because all the natural parents in the Erie County area require their children to be placed with adoptive parents of one of the ‘ ‘ predominant ’ ’ religions. Hdwever, there have been instances, as the court below found, in which natural parents have indicated “ their indifference to the reli *68 gious placement of their child.” Adoptive parents without religious affiliations would, as the courts below have indicated, be eligible to adopt such a child or a child whose religious background is unknown. Moreover, there is no indication that the petitioners are limited to the Erie County area in their search for an adoptive child. Under these circumstances, religious conformity provisions which serve a valid secular purpose may not be said to discriminate against or penalize the petitioners because they do not have a religious affiliation, nor are they thereby placed under an obligation to assume a religious faith in order to be able to adopt a child. (Cf., e.g., Sherbert v. Termer, 374 U. S. 398, 402.)
Likewise without substance is the petitioners’ equal protection argument. They urge that the religious conformity provisions, since they are not reasonably related to the purpose of the adoption laws, create an arbitrary classification which denies them equal protection of the laws. In point of fact, their real quarrel is not with the religious conformity provisions — which quite properly allow surrendering parents to express a religious preference (cf. Pierce v. Society of Sisters, 268 U. S. 510) —but, rather, with the shortages of adoptive children and surrendering parents without religious affiliation or preference.
The order appealed from should be affirmed, without costs.
Judges Burke, Soileppi, Beegan, Breitel, Jasen and Gibson concur.
Order affirmed.

. The quoted subdivision is virtually identical with subdivision 7 of section 373 of the Social Services Law. And section 113 of the Domestic Relations Law, insofar as relevant, provides that “In making orders of adoption the judge • * * when practicable must give custody only to persons of the same religious faith as that of the adoptive child in accordance with article six of the social services law ” — which, we note, includes section 373.