*466 OPINION OF THE COURT
Alice Schlesinger, J.
In this action the plaintiffs seek declaratory and injunctive relief, and damages for violation of their constitutional rights. The basis of the challenge is that the defendants’ administration of the religious matching provisions of the adoption laws (Family Ct Act § 116 [e]) is unconstitutional.
Before the court are motions by the defendants to dismiss this action for failure to state a cause of action. Therefore, for the purpose of the motions, the allegations in the complaint are deemed true (Green v Fischbein, Olivieri Rozenholc & Badillo, 119 AD2d 345 [1st Dept 1986]).
The plaintiffs Kenneth and Theresa Orzechowski are married and childless. They are practicing Roman Catholics. The Orzechowskis sought to adopt a four-year-old girl born to Jewish parents. Plaintiff Rabbi Hirshel Jaffe had agreed to help the Orzechowskis raise the child in the Jewish faith. Plaintiff Association to Benefit Children (ABC) is an organization that provides care to abandoned and disabled children.
In October 1990 after a home study, the Orzechowskis were approved as adoptive parents who would be permitted to adopt a child with a physical disability and special needs. Theresa Orzechowski was born with congenital disabilities which include club feet, dislocated hips and a missing leg socket. She has undergone numerous operations and now is able to walk.
In December 1990 the Orzechowskis saw the picture of SViyear-old Nelli K. (Nelli) in the New York State Adoption Exchange (also known as the blue book). The book described Nelli as suffering from Goltz syndrome. This condition causes fatty lesions on her face and body. She also has spina bifida and requires daily catheterizations.
Nelli had been institutionalized from birth. At 5 V2 months she moved from the hospital where she was born to the Foundling Hospital Inc. (Foundling). This organization is run by an order of Catholic nuns. In November 1989 when Nelli was nearly three her biological parents surrendered her for adoption. In doing so, Nelli’s parents signed a "Declaration of Religious Preference for Child” which stated that they preferred the placement be in a "home of the Jewish (NonHasidic) religion.”
Upon seeing Nelli’s picture, the Orzechowskis became interested in adopting her. They were informed by the Foundling that Nelli was disfigured, lacked bowel control, and was fed by *467 a naso-gastric tube placed in her stomach through her nostrils.
In January 1991 the Foundling provided the Orzechowskis with Nelli’s detailed medical records and recommended consultation with a doctor regarding her condition.
On April 16, 1991 the Orzechowskis met Nelli. During the visit Mrs. Orzechowski asked whether Nelli’s parents had stated a religious preference. She was informed that such a request had not been made. The Orzechowskis decided that they wanted to adopt Nelli.
Subsequent to the visit, the Foundling wrote to the Orzechowskis praising them for their interaction with Nelli stating that "all staff members were positively impressed by your interest, information and sensitivity” to Nelli.
In late April 1991 the Foundling "terminated its relationship” with the Orzechowskis solely because they were not Jewish. In a letter it informed the Orzechowskis that "Save the issue of religion, we have no objection to placing Nelli in your home * * * [y]ou had impressed us as caring, concerned individuals who are ready to provide a loving home for a child.”
In July 1991 the Orzechowskis sought a fair hearing from the New York State Department of Social Services. That request was denied on the ground that the Orzechowskis were not entitled to a hearing. Later that month Nelli was placed with a Jewish family.
Plaintiffs contend that the Orzechowskis were disqualified as adoptive parents solely based on religion. They allege that child care agencies in New York maintain a policy to place children "solely or predominantly” on the basis of the religion imposed on a child.
They contend that this practice results in inferior placements. The religious matching requirement delays permanent placement of the child in a home and prolongs institutionalization. Accordingly, this policy and practice is not in the best interest of the child. Plaintiffs further allege that this policy is especially detrimental to disabled children and children of racial minorities because they are especially hard to place.
In the first cause of action, plaintiffs contend that the defendants’ religious matching requirement violates the Free Exercise and Establishment Clauses of the First Amendment of the US Constitution and article I, §§ 3 and 11 of the NY Constitution.
*468 The second cause of action alleges that the policy requiring adoptive parents share the religion imposed on the child via the natural mother’s stated preference, violates plaintiffs’ right to equal protection.
Plaintiffs allege in the third cause of action that the defendants’ refusal to grant the Orzechowskis a hearing violated their due process rights under the Fourteenth Amendment of the US Constitution and article I, § 6 of the NY Constitution.
The fourth cause of action alleges breach of 42 USC §§ 1981 and 1983.
The fifth cause of action sounds in intentional and negligent infliction of emotional distress. The Orzechowskis assert that the Foundling encouraged their efforts to adopt Nelli. The sudden refusal based solely on religious grounds is shocking and outrageous conduct exceeding all bounds tolerated by a decent society. Additionally, the Orzechowskis contend that the Foundling owed a duty to act reasonably and breached this duty by terminating its relationship with them solely based on religious beliefs.
Plaintiffs seek a declaration that the administration of the religious matching provisions violates the First and Fourteenth Amendments of the US and NY Consitutions. Plaintiffs ask to enjoin the defendants from administering the adoption laws limiting placement solely or predominantly on the basis of religion. Finally, plaintiffs demand an award of compensatory and punitive damages, and attorney’s fees for the violation of their constitutional, statutory and common-law rights.
The State and city defendants move for dismissal on the following grounds: one, plaintiffs lacking standing to assert these claims; two, the Orzechowskis fail to state a cause of action for violation of their constitutional rights; and three, the plaintiffs have failed to sufficiently allege that the religious matching provisions are being violated.
Additionally, the Foundling has moved to dismiss for failure to state a cause of action, the claims sounding in the intentional infliction of emotional distress and the negligent infliction of emotional distress.
I. STANDING
Standing by the Orzechowskis is predicated upon breach of their constitutional rights. Specifically, they contend that the policy to place children based solely or predominantly on religion denies them their freedom of religion and constitutes *469 establishment of religion.[1] Clearly, the Orzechowskis have standing because they are claiming that they have been actually injured by the defendants’ application of the religious matching provisions of the adoption laws (Matter of Donohue v Cornelius, 17 NY2d 390, 397 [1966]).
Plaintiffs also maintain that they have standing as taxpayers pursuant to section 123-b of the State Finance Law to seek injunctive relief because defendants’ unconstitutional acts lead directly to the expenditure of State funds. Plaintiffs allege that millions of tax dollars are spent in implementing the religious matching requirement. Money is improperly expended during the search for adoptive parents of the same religion as well as by prolonged foster care.
Section 123-b (1) of the State Finance Law provides that a taxpayer may maintain an action where "an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication or any other illegal or unconstitutional disbursement of state funds or state property”.
New York follows a liberal rule with regard to taxpayers’ standing to challenge governmental action (New York State Coalition for Criminal Justice v Coughlin, 64 NY2d 660 [1984]). However, in each case the taxpayer has made challenge to the misapplication or disbursement of funds. In Boryszewski v Brydges (37 NY2d 361 [1975]) the taxpayer was permitted standing to test the constitutionality of a statute authorizing expenditure of State funds.[2] Wein v State of New York (39 NY2d 136) involved the unconstitutional lending of State credit. Similarly, Wein v Carey (41 NY2d 498 [1977]) granted taxpayer standing to challenge State issuance of tax and revenue anticipation notes. Wein v City of New York (36 NY2d 610 [1975]) concerns the taxpayers’ right to test the constitutionality of a municipal bond issue.[3]
*470 Plaintiffs rely upon Community Serv. Socy. v Cuomo (167 AD2d 168 [1st Dept 1990]) for taxpayer standing. In Community Serv. Socy., taxpayer standing was accorded pursuant to section 123-b (1) of the State Finance Law where plaintiffs’ challenged promulgation of Medicare regulations, if implemented, would involve disbursement of State funds.
In the case at bar, the challenge is not made to the disbursement of State funds per se. Rather, plaintiffs challenge an alleged policy of the defendants to use religion as the sole or predominant factor in making placements. Assuming that there is such an institutional policy, it seems unlikely that moneys expended on housing and clothing foster children could be characterized as a wrongful expenditure or misapplication of State funds. This is especially so in light of the discretion granted to officials to make placement determinations based on the best interest of the child.[4]
Accordingly, plaintiffs have failed to establish that they are entitled to taxpayer standing under section 123-b of the State Finance Law.
Plaintiffs maintain that ABC has organizational standing to protect the rights of needy and abandoned children. An organization has standing to represent "individuals who are unable to seek a judicial remedy on their own behalf’ (Mixon v Grinker, 157 AD2d 423, 427 [1st Dept 1990]). In Mixon, plaintiff Coalition for the Homeless, a nonprofit group that provided advocacy and services for the homeless, had standing to bring an action in its representative capacity seeking to compel the State and City of New York to provide homeless persons infected with the HIV virus with medically suitable housing.
*471 Similarly, in Grant v Cuomo (130 AD2d 154 [1st Dept 1987], affd 73 NY2d 820 [1988]) the court held that organizations had standing to compel the City of New York to comply with a statutory directive to investigate child abuse reports within 24 hours. The Appellate Division noted as follows: "[W]e cannot ignore the obvious fact that if organizations of this kind are denied standing, the practical effect would be to exempt from judicial review the failure of the defendants, here conceded, to comply with their statutory obligations. Manifestly the abused children are not themselves able to seek a judicial remedy, nor is it likely that parents or caretakers, the objects of the claims of abuse or maltreatment, would undertake to secure a remedy. Given the obvious reality that the protection of abused or maltreated children is a central concern of our society, and given the historic relationship of organizations concerned with the care and protection of children to the goals sought to be achieved by the relevant statute, we are persuaded that Special Term was justified in denying the motion to dismiss as to the organizational plaintiffs.” (Supra, at 159.)
Plaintiffs allege in the complaint that "[c]hildren denied suitable placements in adoptive homes due to defendants’ application of religious matching requirements generally are not able to seek a judicial remedy.”
The city counters that section 249 of the Family Court Act mandates appointment of Law Guardians to represent the child in all foster proceedings and parental rights termination proceedings.
Assuming for the purpose of this motion that defendants engage in a policy or practice where religion is the sole or predominant factor in determining placement, the court cannot make a determination based on the submissions whether Law Guardians would be in a position to effectively challenge child care agencies which violate the religious matching guideline of section 116 (g) of the Family Court Act.
Therefore, the defendants’ motion to dismiss on the ground that ABC lacks standing is denied without prejudice to renew on a motion for summary judgment or at trial.
II. CONSTITUTIONAL VIOLATIONS
Section 116 of the Family Court Act relates to the religion and placement of a foster child. Subdivision (g) provides in *472 relevant part that: "The provisions of subdivisions (a), (b), (c), (d), (e) and (f) of this section shall, so far as consistent with the best interests of the child, and where practicable, be applied so as to give effect to the religious wishes of the natural mother”.
In Matter of Dickens v Ernesto (30 NY2d 61 [1972]) petitioners were denied permission by the Department of Social Services (DSS) to file an application as adoptive parents solely on the ground that they did not have a religious preference. Although the lower courts ordered DSS to process the Dickens’ application they held that petitioners’ constitutional rights had not been violated.
The Court of Appeals affirmed. It held that the religious placement factor in section 116 (g) did not violate the Establishment Clause. The court ruled that although religious preference of the biological parent was a "relevant consideration”, it was but one of many factors. (Supra, at 66.) Nor was it mandatory or controlling factor. Placements were based on the best interest of the child, taking into consideration religious and secular factors.
Nor did the Court of Appeals find a violation of petitioners’ right to the free exercise of religion (actually in the Dickens case, the right to profess no religion). Noting that not all biological parents expressed a preference, the petitioners were free to adopt such a child. Therefore, the "religious conformity provisions which serve a valid secular purpose may not be said to discriminate against or penalize the petitioners because they do not have a religious affiliation, nor are they thereby placed under an obligation to assume a religious faith in order to be able to adopt a child” (supra, at 68).
In the case at bar, plaintiffs maintain that the defendants are administering the religious preference provisions in violation of Dickens (supra). They contend that the defendants are using religion as the sole or determinative factor in making placement decisions which amounts to the State establishing religion. Further, they assert that to accommodate the biological mother’s religious preference, the children are subjected to prolonged institutionalization.
The Supreme Court in Committee for Public Educ. v Nyquist (413 US 756, 773 [1973]) applied a three-prong test to determine whether a law violates the Establishment Clause. "[T]he law in question first, must reflect a clearly secular legislative purpose * * * second, must have a primary effect that neither *473 advances nor inhibits religion * * * and, third, must avoid excessive government entanglement with religion”. (Supra, at 773.) To be constitutional the law must meet all three elements of the test (supra, at 772-773).
Plaintiffs, in the instant matter, state a cause of action under Dickens (supra) because if their central claim is proven, religion would be the controlling factor in determining whether a placement is in the best interest of a child. This would arguably fail to meet the primary effect and/or excessive entanglement prong of the establishment test. Therefore, the defendants’ motion to dismiss the Establishment Clause cause of action is denied.[5]
Next, plaintiffs maintain that defendants’ application of the religious matching provisions "inhibited the Orzechowskis’ free exercise of their religion — Catholicism—because they have been told that they cannot continue to practice their religion and adopt a child whose biological parents were Jewish”.
A violation of the Free Exercise Clause occurs "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden on religion exist. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial” (Thomas v Review Bd., Ind. Employment Sec. Div., 450 US 707, 717-718 [1981]).
Assuming that religion is the sole or predominant factor upon which placement decisions are made, plaintiffs fail to state a cause of action under the Free Exercise Clauses of the US and NY Constitutions. It cannot be said that there is substantial pressure on the Orzechowskis to modify their religious beliefs. Like the petitioners in Dickens (supra), the Orzechowskis are free to adopt a child whose natural parents were "indifferent” to the religious placement of their child.
*474 Similarly, plaintiffs fail to state a claim under the Equal Protection Clauses of the US and NY Constitutions. Plaintiffs contend that the religious matching provisions must be narrowly tailored to a compelling government need. However, the strict scrutiny test applies only to government’s action that interferes with a fundamental right.
Plaintiffs assert that their fundamental right of free exercise of religion is being impeded. However, the court has found that there is no free exercise claim here.
Moreover, as noted above, in Dickens (supra), the Court of Appeals rejected the petitioners’ equal protection argument finding that the religious matching provisions have a valid legitimate secular purpose. That holding is controlling here. The equal protection claims cannot survive rational basis scrutiny and are therefore dismissed.
Plaintiffs further contend that they were deprived of their substantive and procedural due process rights. To evoke a due process claim plaintiffs must show deprivation of a life, liberty or property interest. Other than claiming their liberty interest was violated based on the free exercise of religion, plaintiffs fail to show a protected interest within the Due Process Clauses of the US and NY Constitutions.
Additionally, since there is no infringement of a constitutional right, the substantive due process claim will not lie because the religious matching provisions satisfy rational basis scrutiny (Matter of Dickens v Ernesto, 30 NY2d 61, supra).
Accordingly the substantive and procedural due process claims are also dismissed.
Plaintiff’s reliance on Social Services Law § 372-e (4) as requiring the State to provide a hearing to the Orzechowskis is not persuasive.
Section 372-e relates to applications received from persons who are seeking to become adoptive parents (see, § 372-e [1]). Subdivision (4) provides as follows: "Any person whose application has been denied or whose application has not been acted upon by an authorized agency within six months of its submission may request and shall be granted a hearing in accordance with the provisions of section twenty-two of this chapter relating to fair hearings.”
The fair hearing requirement does not apply to the Orzechowskis because their application to become adoptive parents had been approved.
*475 18 NYCRR 421.18 (n) (1) permits foster parents and certain blood relatives who are unsuccessful in adopting the child to contest the determination at a hearing. Thus the regulation permits two classes of individuals greater rights (based presumably on their relationship with the child) than conferred by the statute. The regulation is not inconsistent with State law because there is no requirement that the Orzechowskis be provided a hearing pursuant to Social Services Law § 372-e (4).
Plaintiffs’ claim made pursuant to 42 USC § 1981 is dismissed without opposition. Additionally, a violation of section 1981 must be predicated upon a claim of racial discrimination (Patterson v McLean Credit Union, 491 US 164 [1989]).
m. INFLICTION OF EMOTIONAL DISTRESS
An action for intentional infliction of emotional distress may lie where the conduct " 'has been so outrageous in character, and so extreme in degree, as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community’ ” (Fischer v Maloney, 43 NY2d 553, 557 [1978], quoting Restatement [Second] of Torts § 46, comment d).
As a preliminary matter the court concludes that the Foundling’s conduct was not sufficiently outrageous or extreme so as to permit this cause of action to remain in the lawsuit. Clearly, the Foundling was attempting to comply with the religious wishes of Nelli’s biological parents. It was done pursuant to statutory authority. Furthermore, the Dickens court recognized the natural parents’ interest in influencing the placement based on religious considerations as well.
In a claim for negligent infliction of emotional distress the Orzechowskis must establish that the Foundling owed them a duty, which was breached, resulting in emotional harm (Kennedy v McKesson Co., 58 NY2d 500, 504 [1983]).
Generally "contemporaneous or consequential physical harm” is a necessary element in a claim of emotional distress because it serves to validate the psychological trauma. However, where there is " 'an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious’ ” recovery is permitted for pure emotional harm (Johnson v State of New York, 37 NY2d 378, 381-382).
In Johnson (supra) the court permitted a claim for emotional harm where a hospital sent a false telegram stating *476 that plaintiffs mother had died and that her relatives should make burial arrangements (see also, Battalla v State of New York, 10 NY2d 237 [distress claim permitted based on improperly locked ski-lift belt]; cf., Lancellotti v Howard, 155 AD2d 588 [2d Dept 1989] [assertion that doctor misdiagnosed plaintiff as being pregnant and treated her for that condition for several months fails to state a cause of action]; Hauser v Dalton, NYLJ, Feb. 13, 1992, at 21, col 5 [Sup Ct, NY County] [defendants’ failure to perform statutory duties to protect plaintiffs foster children, to render preventative services, and to avert need of foster care placements does not state a claim sounding in negligent emotional distress absent allegation that plaintiff mother feared for her physical safety]).
In the case at bar, the Orzechowskis’ assertion that they suffered severe emotional distress caused by the Foundling misadvertising Nelli’s availability, misrepresenting her status, and refusing to. permit her adoption based solely on religious grounds does not fall within the line of special circumstance cases. Accordingly, a necessary component of the emotional distress claim is an allegation that the breach "either endangered the [Orzechowskis’] physical safety or caused the [Orzechowskis to] fear for [their] physical safety” (Lancellotti v Howard, supra, at 589-590).
Since the Orzechowskis fail to make such an allegation, the Foundling’s motion to dismiss the claim for negligent infliction of emotional distress is granted.

. While the complaint does seek damages based on breach of statutory rights, plaintiffs in their brief have limited the Orzechowskis’ standing to violation of their constitutional rights. Therefore, the zone of interest test analysis (Matter of Dairylea Coop. v Walkley, 38 NY2d 6 [1975]) need not be addressed.

. Shortly after the Court of Appeals came down with the Boryszewski decision expanding a taxpayers’ right to sue, the Legislature adopted section 123-b (1) of the State Finance Law. The Legislature specifically stated that it did not intend to "abridge or alter rights of actions or remedies now or hereafter existing” (State Finance Law § 123-i).

. Defendants also cite a number of cases on this point, all relate to the *470 disbursement of funds. (See, Weimer v Board of Educ., 52 NY2d 148 [1981]; Chester Civic Improvement Assn. v New York City Tr. Auth., 122 AD2d 715 [1st Dept 1986]; State Community Aid Assn. v Regan, 112 AD2d 681 [3d Dept 1985].)

. Plaintiffs also rely on a Federal case, Wilder v Berstein (499 F Supp 980 [SD NY 1980]), granting taxpayer standing to challenge expenditures that violate the Establishment and Free Exercise Clauses of the First Amendment. However, it is unclear whether the result would be the same under current Supreme Court taxpayer standing analysis challenging Establishment Clause violations. The challenge must be to Congress’ exercise of its taxing and funding power (see, Valley Forge Coll. v Americans United, 454 US 464 [1982] [executive agencies’ decision to give surplus land to religious college not a challenge to Congress’ taxing and spending power]; see also, Bowen v Kendrick, 487 US 589 [1988] [taxpayer had standing to challenge spending where Congress determined how funds were to be spent and the executive was carrying out the congressional intent]).

. Defendants contend that plaintiffs’ establishment claims are a disguised attempt to severely limit application of the religious matching provisions based on a different and unarticulated best interest of the child test. The court does not construe the complaint to make such a broad challenge to the religious matching law. While plaintiffs do suggest that Dickens (supra) was incorrectly decided, that issue is obviously not before this court. Rather, the central issue in this litigation is whether the law is being applied in a manner that will pass constitutional muster.