**OSCAR PRODUCTIONS, INC., and Jennifer O'Neill, Plaintiffs,**

v.

**Walter ZACHARIUS and Kensington Publishing Corp., Defendants.**

No. 94 Civ. 3316 (PKL).

United States District Court, S.D. New York.

June 28, 1995.

Aegis J. Frumento, New York City, for plaintiffs (Aegis J. Frumento and Anthony K. Modafferi, III, of counsel).

Leboeuf, Lamb, Greene & MacRae, L.L.P., New York City, for defendants (David S. Tannenbaum, of counsel).

## OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by Oscar Productions, Inc. ("Oscar") and Jennifer O'Neill ("O'Neill") against Walter Zacharius ("Za-charius") and Kensington Publishing Corp. ("Kensington"). Plaintiffs seek damages for breach of contract and for six other claims all deriving from the non-fulfillment of an alleged agreement concerning the writing of a romance novel. Defendants now move this Court for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as to plaintiffs' first cause of action, and move to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the other six claims in plaintiffs' complaint. For the reasons stated below, defendants' motions are granted in part and denied in part.

## BACKGROUND

Plaintiff O'Neill is a national celebrity who has appeared in movie and television productions, has been a spokesperson for commercial products, and has written a number of screenplays. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and to Dismiss the Complaint ("Plaintiff Mem.") at 3. Oscar is O'Neill's management and production company, and receives all fees paid on account of O'Neill's activities. *Id.* Kensington is a New York corporation that operates primarily as a mass market publisher of romance novels and other paperback books. *See* Defendants' Memorandum of Law in Support of their Motion for Partial Summary Judgment and to Dismiss the Complaint ("Defendant Mem.") at 3. Zacharius is the Chairman of the Board and Chief Executive Officer of Kensington. *Id.*

In the summer and fall of 1992, O'Neill was approached by Witt Stewart ("Stewart") and solicited to write a novel for Kensington. Plaintiff Mem. at 3. Stewart informed O'Neill that Kensington wanted her to author a novel in a series of romances developed for women in their forties (the "Series"). *Id.* O'Neill and Stewart met with Ann LaFarge ("LaFarge"), a senior editor at Kensington, on October 25, 1992. Defendant Mem. at 3. Along with a letter dated October 28, 1992, Lafarge sent O'Neill a couple of books from

the Series and a tip sheet on how to write books.[1]

On or about November 4, 1992, O'Neill met with Zacharius for dinner, and Zacharius told O'Neill that he wanted her to write a novel. Plaintiff Mem. at 4. The next day, Zacharius took O'Neill on a tour of Kensington's offices and she then met with Zacharius and Barbara Bennett ("Bennett"), Kensington's general counsel and contracts manager. *Id.* at 5; Defendant Mem. at 5. Plaintiffs allege that at this meeting, the parties agreed on a number of points and entered into a contractual relationship. Plaintiffs further allege that in a letter to O'Neill, dated November 13, 1992, Bennett memorialized the terms of the agreement. Plaintiff Mem. at 5.

Subsequent to the meeting with Zacharius and Bennett, O'Neill asserts that she promoted the Series in a number of television appearances. Moreover, she contends that she only engaged in such promotional activity after specific further assurances from Zacharius that they had a deal. Plaintiff Mem. at 6.

The parties do not dispute that O'Neill proceeded to submit an outline and the first forty pages of her proposed book. Defendants contend that O'Neill's written submissions were unacceptable. In January 1993, Kensington ceased all communication with O'Neill and advised Stewart that it no longer wished to proceed with O'Neill's proposed novel.

## DISCUSSION

### I. *The First Claim*

### A. *The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Thornton v. Syracuse Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 245 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *see also Lang,* 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

■ The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine

---

1. In the letter, however, LaFarge also stated that O'Neill's book would be special and that she did not need to conform to the usual rules in writing her book. *See* Plaintiff Mem. at 4.

the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and of identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Ry. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and quotation omitted); *see also Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir.1992) (the court must "consider the record in the light most favorable to the non-movant. However, the

non-movant may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). The Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

**B. *Defendants' Motion***

In their first claim, plaintiffs allege that Kensington breached its agreement with Oscar and O'Neill. Plaintiffs maintain that they entered into an oral agreement with Kensington during the November 6, 1992 meeting (the "Meeting"), and that the agreement was confirmed by the letter from Bennett, dated November 13, 1992 (the "Letter"). Defendants, in turn, contend that no agreement was ever reached. Defendants assert that plaintiffs' breach of contract claim rests entirely on the proposition that the Letter confirmed the terms of Kensington's agreement with O'Neill, but that, in fact, the Letter does not confirm the terms of an agreement. Rather, argue defendants, the Letter demonstrates that no agreement was reached.[2]

Defendants contend that Kensington always uses a formal written contract when entering into deals with authors; that given the complex nature of the deal that was being considered, a brief initial meeting could not possibly have afforded sufficient opportunity for an agreement to have been reached; and that Stewart's behavior subsequent to both the Meeting and O'Neill's receipt of the Letter demonstrates that plaintiffs understood that no deal had been reached.

Defendants argue in the alternative that the alleged agreement is too indefinite to be enforceable.[3] They note that the Let-

---

**2.** Defendants note that at one point the letter states, "[t]his letter outlines the prospective structure of the deal and the various points that we discussed during our meeting." Defendant Mem. at 11.

**3.** For a contract to be binding, the parties' agreement must be definite enough so that the parties' intent can be ascertained with some degree of certainty. *See Candid Productions, Inc. v. International Skating Union*, 530 F.Supp. 1330, 1333 (S.D.N.Y.1982) (Weinfeld, J.). When essential

ter alludes to the creation of a new corporate entity but that there was no instruction as to what type of corporation it was to be, where it was to be incorporated, or how it should be capitalized. Defendants further observe that the letter does not indicate whether O'Neill's production company or her holding company would be the entity owning O'Neill's 50% of the new corporation. In addition, argue defendants, plaintiffs do not declare whether O'Neill or Oscar would be paid the alleged $75,000 advance. Lastly, defendants contend that the Letter is too indefinite because it does not even indicate whether Kensington or the new corporation is to pay the advance.

Plaintiffs respond that the question of whether or not there was an agreement is a classic factual dispute that can only be resolved by testing the credibility of the participants to the discussions. Plaintiffs further contend that the terms of the agreement are not so ambiguous as to be unenforceable. They argue that the Letter does not indicate that it is subject to further negotiation or to definitive documentation. They also assert that the Letter can only be read as a memorialization of an agreement previously reached between the parties.

In support of their argument, plaintiffs highlight the special nature of O'Neill's relationship with Kensington. Specifically, Kensington's standard form contract is a royalty arrangement, but O'Neill alleges that she had agreed to a joint venture with Kensington. In addition, O'Neill asserts that La-Farge had indicated that O'Neill's book was to be special and that this evidences an intent on the part of Kensington to treat O'Neill differently from its other authors.

■ Under New York law, the general requisites for formation of a contract include offer, acceptance, and consideration. *See* Restatement (Second) of Contracts §§ 24, 50, 71

(1981). This Court must assess whether material issues of fact exist concerning the contract allegedly entered into at the Meeting and memorialized by the Letter. Defendants assert that there is no issue of material fact concerning the question of whether a contract was formed at the Meeting. Plaintiffs have the burden of establishing all essential terms of the alleged contract, with sufficient definiteness that the Court can interpret its terms. Plaintiffs must also establish that there was a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound. *Cf. Cronk v. State,* 100 Misc.2d 680, 684, 420 N.Y.S.2d 113, 116 (Ct. Cl.1979).

■ This Court preliminarily notes that where an alleged contract is oral, plaintiff has a particularly heavy burden to establish objective signs of the parties' intent to be bound. *See Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80 (2d Cir. 1985). The burden is heavier in oral agreements because " '[a] primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they never intended.' " *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir.1989) (quoting *Teachers Insur. & Annuity Assoc. v. Tribune Co.,* 670 F.Supp. 491, 497 (S.D.N.Y.1987)). " '[M]ore is needed than agreement on each detail [to create a binding obligation. There must be] overall agreement . . . to enter into the binding contract.' " *Id.*

This Court finds that the Letter merely broadly outlines the structure of a potential agreement in indefinite terms.[4] The Letter is perhaps most properly conceptualized as comprising an agreement to agree. The Letter is too vague to constitute the terms of a contract. For example, it is not clear who the parties to the alleged agreement were

---

terms of an agreement are omitted or phrased in an indefinite manner, no legally enforceable contract exists. *See Brookhaven Housing Coalition v. Solomon,* 583 F.2d 584, 593 (2d Cir.1978).

4. In particular, the Letter indicates that O'Neill would not be paid a standard royalty but would be involved in a joint venture with Kensington; the joint venture would be a 50–50 proposition with Stewart being paid a 10% interest from

Kensington's share; Kensington would finance the publication of the book and could recover its costs from the joint venture; O'Neill would be paid a $75,000 advance against the overall profits of the book; O'Neill would be commissioned to write the screenplay for any movie to develop from the book at a price to be negotiated in good faith; and O'Neill would participate in promotional efforts.

supposed to be; nor what type of corporate entity was to be created; nor how that entity would be capitalized; nor how or to whom the alleged advance was to be paid.

The indefiniteness of the Letter, however, does not require that the Court conclude that the purported agreement reached at the Meeting must be viewed as an unenforceable agreement to agree. *Cf. N.F.L. Insurance by Lines v. B & B Holdings*, 874 F.Supp. 606, 614 (S.D.N.Y.1995) (Leisure J). *Benevento v. RJR Nabisco, Inc.*, 1993 WL 126424 at *4 (S.D.N.Y. April 1, 1993) (Leisure, J.); *De Vecchi v. De Vecchi*, 34 A.D.2d 790, 311 N.Y.S.2d 530, 531 (2d Dep't 1970).[5] It is possible that an oral contract was entered into at the Meeting, as plaintiffs maintain, and the Letter merely broadly recites the understanding reached rather than attempting to precisely document the contract.[6] In the instant motion for summary judgement, viewing the facts alleged by plaintiffs to be true, and viewing those facts in the light most favorable to plaintiffs, this Court cannot conclude, as a matter of law, that the parties did not enter into an oral contract at the Meeting.[7]

■ The Court, however, finds that defendants' motion to dismiss the first cause of action of plaintiff's complaint should be granted to the extent that the first count names Zacharius as a defendant. Defendants maintain that Zacharius was, at all times, acting in his capacity as an officer of Kensington. Defendants "cannot be held individually liable for a breach of contract [if] they acted in their capacities as officers." *Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.*, 808 F.2d 982, 986 (2d Cir.1987); *see also Value Time, Inc. v. Windsor Toys, Inc.*, 709 F.Supp. 436, 438 (S.D.N.Y.1989) ("Because he was acting in his capacity as an officer, [defendant] cannot be held individually liable for the corporation's alleged breach of contract."); *cf. Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 No. 94–7767, slip op. at 4517 (2d Cir.1995) ("Immunity extends to officers or employees who induce their corporation to breach a contract."). Plaintiffs merely assert that it is impossible to determine the extent to which Zacharius was acting in a personal or in a corporate capacity. Plaintiffs, however, adduce no evidence indicating that Zacharius was acting in a personal capacity.[8]

Accordingly, this Court must deny defendants' motion for summary judgment dismissing count one of plaintiffs' action as con-

5. "Where a question of intention is determinable by written agreements, the question is one of the law, appropriately decided ... on a motion for summary judgment." *Arcadian Phosphates*, 884 F.2d at 73 (citations omitted). This Court finds, however, that in the instant action, the question of intention is not determinable from simply reading the Letter. The Letter neither conclusively evidences the existence of a contract, as plaintiffs contend, nor the nonexistence of a contract, as defendants maintain.

6. Even though this Court finds that the letter need not be read as the memorialization of a previous agreement and neither is it sufficient to constitute a contract on its own, this fact does not necessitate a finding that no contract was entered into at the Meeting. "[A]bsent an expressed intent that no contract shall exist, mutual assent between the parties, even though oral or informal, to exchange acts or promises is sufficient to create a binding contract ... to avoid the obligation of a binding contract, at least one of the parties must express an intention not to be bound until a writing is executed." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 570 (2d Cir.1993).

Simply stated, O'Neill testifies that such an agreement was reached and Zacharius avers that no such deal was struck. The Court is left with a question of fact, the resolution of which will depend upon the finder of fact's conclusions concerning credibility and the other evidence present. To endeavor to effect such a resolution is an enterprise inappropriate for this Court to undertake on the instant motion for summary judgment.

7. The Court does observe, however, that although it cannot grant summary judgment, plaintiffs' assembled evidence is meager. The Court notes, for example, plaintiffs' outrage that defendants "argue that the agreement [that O'Neill would write a novel] was conditioned upon O'Neill being *able* to write a novel." *See* Plaintiff Mem. at 13 (emphasis added).

8. In addition, in paragraph three of their 3(g) statement, defendants state, "Zacharius is the Chairman of the Board and Chief Executive Officer of Kensington and, with respect to all of the allegations in this action, was acting in his official capacity as an officer of Kensington." Defendants' 3(g) Statement at ¶ 3. Plaintiffs' counter-statement pursuant to Local Rule 3(g) does not dispute this fact.

cerns Kensington, but must grant the motion as regards Zacharius.[9]

## II. *The Other Six Claims*

### A. *The Standard for a Motion to Dismiss*

▇ Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action where a plaintiff has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, a court must assume the facts alleged by the plaintiff to be true and must liberally construe them in the light most favorable to the plaintiff. *Easton v. Sundram*, 947 F.2d 1011, 1014 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Therefore, "the court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "[T]he court's task on a Rule 12(b)(6) motion is not to rule on the merits of plaintiffs' claims, but to decide whether, presuming all factual allegations of the complaint to be true, and drawing all reasonable inferences in the plaintiff's favor, the plaintiff could prove any set of facts which would entitle him to relief." *Weiss v. Wittcoff*, 966 F.2d 109, 112 (2d Cir.1992) (citations omitted).

### B. *Claims 2 and 6*

Plaintiff's second and sixth claims seek to recover expenses that plaintiffs' allegedly incurred in reliance on the purported agreement. Plaintiffs assert that if there is found to be no contract, then O'Neill should recover, based upon her reasonable reliance upon defendants' promises, her out-of-pocket expenses incurred (the second claim) and the value of the promotional opportunities lost by virtue of her undertaking to promote defendants' books (the sixth claim). The two claims are based on promissory estoppel.[10]

▇ "In New York the elements of a claim for promissory estoppel are: a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984) (citations omitted).

▇ Defendants first contend that the absence of a clear and unambiguous promise is a fatal flaw to plaintiff's claim of promissory estoppel.[11] Secondly, defendants argue that there was no reasonable or foreseeable reliance on plaintiffs' part because O'Neill did not make the expenditures at issue in expectation of reimbursement from defendants.

This Court is unable to conclude, as a matter of law, that no clear promise was made at the Meeting. O'Neill attests that such a promise was made, and she submits subsequent statements by Zacharius and others that could be considered evidence of such a promise. Accordingly, plaintiffs have satisfied adequately their burden of raising a material issue of fact as to whether defendants made an unambiguous promise.

In addition, O'Neill avers that she reasonably relied on the alleged promise in incurring expenses to write the proposed novel and in foregoing endorsement opportunities upon which she otherwise would have capital-

9. As a final matter, defendants contend that Oscar's claim, at least, must be without merit because that entity never entered into a contract with Kensington. This Court, finds, however, that on the present record, there are material questions of fact concerning what exactly transpired at the Meeting and what agreements, if any, were reached. Accordingly, the Court cannot dismiss Oscar's action on the instant motion.

10. "[T]he damages recoverable in a promissory estoppel case are sometimes referred to as 'reli-

ance damages,' namely, the actual expenditure made in preparation for performance or in performing the work which has been induced by the defendant-promisor." *Cyberchron Corp. v. Calldata Systems Development, Inc.*, 47 F.3d 39, 46 (2d Cir.1995) (citations omitted).

11. Defendants assert that plaintiffs do not allege that defendants said that they would pay for O'Neill's expenses.

ized. She maintains that such expenditures and foregone earnings constitute reliance on the purported promise irrespective of whether or not there was a specific promise that particular expenses would be reimbursed or a specific requirement that she could not endorse other products. O'Neill asserts that she incurred the costs at issue in reasonable reliance on the promise of a $75,000 advance, and that her sacrifice of other endorsement opportunities in reliance on the promise was reasonable due to the inherent limitations in the number of products which a celebrity can endorse meaningfully. This Court finds that plaintiffs have satisfied adequately their burden of raising a material issue of fact as to whether they reasonably relied on defendants' purported promise.

Consequently, assuming all of the allegations of plaintiffs' complaint to be true and drawing all reasonable inferences in plaintiffs' favor, this Court must find that material issues of fact exist concerning both whether or not an unambiguous promise was made to O'Neill and whether or not she reasonably relied on that promise in incurring expenses and forfeiting endorsement opportunities. Accordingly, defendants' motion to dismiss plaintiffs' second and sixth causes of action must be denied.

### C. *Claim 3*

■ Plaintiffs' third cause of action asserts a claim in *quantum meruit*. In order to make out a claim in *quantum meruit*, plaintiffs must establish (1) plaintiffs' performance of services in good faith; (2) acceptance of the services by the persons to whom such services were rendered; (3) expectation of compensation; (4) and the reasonable value of such services. *See Paper Corp. of United States v. Schoeller Technical Papers*, 773 F.Supp. 632, 640–41 (S.D.N.Y.1991); *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp. Inc.*, 171 A.D.2d 479, 484, 567 N.Y.S.2d 404, 408 (1st Dept.1991).

■ Defendants contend that plaintiffs did not perform any services, and that defendants did not receive any benefit. Plaintiffs respond that O'Neill endorsed the Series on various television programs and through nationally distributed print media. If true,

such endorsements would constitute services performed by O'Neill, and, further, it is likely that defendants benefited from such services. This Court finds that plaintiffs' pleadings with respect to the third claim are sufficient to withstand defendants' instant motion to dismiss and that issues of fact exist as to whether plaintiffs did furnish services from which defendants benefited.

### D. *Claim 4*

■ Plaintiffs' fourth claim is one for unjust enrichment. Defendants contend that there can be no unjust enrichment because O'Neill did not confer any benefit upon Kensington. As discussed in this Court's analysis of plaintiffs' third claim, however, this Court determines that material questions of fact exist concerning whether or not plaintiffs conferred a benefit upon defendants. Accordingly, defendants' motion to dismiss plaintiffs' fourth cause of action must be denied.

### E. *Claim 5*

■ Plaintiffs' fifth cause of action sounds in fraud. Specifically, plaintiffs' complaint states in substance, "[b]y reason of the foregoing, Defendants have defrauded plaintiffs." Complaint at ¶ 45. As the Second Circuit held in *Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 997, 1008 (2d Cir. 1988):

> Under New York law, a plaintiff claiming fraud must prove, by clear and convincing evidence, (1) that the defendant made a misrepresentation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.

*Id.* (citations omitted).

Defendants contend that plaintiffs' fraud claim fails to allege the elements of a fraud under New York law, and that under New York law, there is no fraud cause of action based on a breach of contract. Plaintiffs respond that the fifth claim seeks, upon a

finding that there is no contract, a determination that defendants are liable for the damages plaintiffs suffered in reliance upon defendants' intentionally deceptive statements about the necessary prerequisites to author a novel for Kensington. Plaintiffs state that had O'Neill known that she needed novel-writing experience to author a book for Kensington, she would not have incurred the expenses at issue nor would she have promoted Kensington and the Series.

The Court notes, however, that plaintiffs' complaint is not pled in the alternative, and the complaint appears to plead a fraud cause of action based on breach of contract. In addition, this Court finds that despite plaintiffs' creative interpretation of their complaint in their memorandum of law, they have failed to plead the necessary elements of a fraud claim.[12] Accordingly, defendants' motion to dismiss plaintiffs' fifth cause of action must be granted.

### F. *Claim 7*

 Plaintiffs' seventh cause of action is for negligent infliction of emotional distress. Plaintiffs state that while damages may not be awarded for an emotional distress claim in a contract action, such damages may be properly sought on fraud claims. *See Mon–Shore Management, Inc. v. Family Media, Inc.*, 584 F.Supp. 186, 195 (S.D.N.Y. 1984). This Court, having found that plaintiffs have not properly stated a cause of action for fraud, must therefore also dismiss plaintiffs' claim for negligent infliction of emotional distress. In addition, in order to show negligent infliction of emotional distress, a plaintiff must establish that the defendant owed her a duty; that the duty was breached; and that emotional harm resulted.

*See Orzechowski v. Perales*, 153 Misc.2d 464, 475, 582 N.Y.S.2d 341, 349 (Sup.Ct.N.Y.Co. 1992). In the instant action, plaintiffs do not make such allegations in their pleadings.

Accordingly, defendants' motion to dismiss should be granted as to plaintiffs' seventh cause of action.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment as to plaintiffs' first cause of action is denied as to defendant Kensington but is granted as to defendant Zacharius. Defendants' motion to dismiss all of plaintiffs' other causes of action is granted with regard to plaintiffs' fifth and seventh causes of action.

**SO ORDERED.**

---

**12.** The Court observes, however, that Federal Rule of Civil Procedure 15 permits a party to amend a pleading by leave of the court, and directs that "leave shall be freely given when justice so requires."

The Second Circuit has interpreted Rule 15 to permit denial of a motion to amend "only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)); *Tokio Marine and Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir.1986). "[A] court should deny leave to amend a pleading on grounds of futility only when the proposed amendment is clearly frivolous or advances a claim that is legally insufficient on its face." *Cashman v. Montefiore Medical Center*, 1993 WL 227700, *2 (S.D.N.Y.) (PKL).

*Preferred Physicians Mutual Risk Retention Group v. Cuomo*, 865 F.Supp. 1057, 1069 (S.D.N.Y. 1994) (Leisure, J.).