HENRY P. BRUMMER et al., Respondents, *v.* STATE OF NEW YORK, Appellant. (Claim No. 40246.)

Fourth Department, March 31, 1966.

*Louis J. Lefkowitz, Attorney-General (Douglas L. Manley* of counsel), for appellant.

*Moriarty & Swanz (Jeremiah J. Moriarty* of counsel), for respondents.

WILLIAMS, P. J. The State has appealed from an award to the claimants for the appropriation of lands. The amount awarded was based solely upon an agreement executed by the parties pursuant to the terms of subdivision 13 of section 30 of the Highway Law.

The pertinent portion of such subdivision is: '' Claims for the value of the property appropriated and for legal damages caused by any such appropriation may be adjusted by the superintendent of public works, even though a claim has been filed with the court of claims, if the amount thereof can be agreed upon with the owner or owners thereof. If the amount of a claim cannot be agreed upon, the superintendent of public works shall offer to the owner or owners an amount equal to sixty per cent of the amount determined by the superintendent to be the value of such claim. Upon the acceptance of such offer the superintendent shall enter into an agreement with such owner or owners providing for such payment with interest thereon, if any, as allowed by law and reserving to such owner or owners the right to file such claim with the court of claims or if a claim has been filed reserving the right to prosecute said claim.''

After certain preliminary negotiations, which failed to result in a settlement, an agreement was delivered to claimants by the State pursuant to said subdivision, which recited that the value of the claim could not be agreed upon and that the Superintendent of Public Works was willing to pay to claimants an amount equal to 60% of $60,700, the amount determined by the Superintendent to be the value of all claims for the property appro-

priated and legal damages caused by said appropriation. The agreement contained the following important provision: "It is further agreed that in any trial of a claim that may be filed by the Claimant, neither the determination of the Superintendent of Public Works, as hereinabove set forth, nor any data, estimates or appraisals made or prepared in support thereof, shall be evidence of the value of the claim or of the property affected by said claim." The agreement was entitled "Agreement for Partial Payment" and recited that it was made pursuant to section 30 of the Highway Law.

The offer was accepted by claimants and the acceptance, of course, was subject to all of the terms and conditions of the agreement, including the above-quoted portion. Thereafter, partial payment was made and accepted by the claimants. They reserved all of their rights to present and prosecute their claim, and that was done. The case was restored to the Trial Calendar and tried.

The case was presented by both claimants and the State as a normal appropriation claim. There was no request to amend the claim to state that it was based on contract.

After the claimants had rested and upon cross-examination of the State's expert, he was asked if anyone else had made an appraisal for the State. This was objected to, but the objection was overruled. This line of inquiry was pursued and permitted over the State's objection. We do not hold that this alone was erroneous. It was probably a matter of proper inquiry, on the theory that a party should not be permitted to obtain more than one appraisal and then use only the lower or lowest and withhold the other or others.

After the State had rested, the court inquired whether there had been a partial payment. The court then recalled Henry P. Brummer, one of the claimants, and over objection the court brought out that there was an agreement for a partial payment, which was fully performed by the State. The court then made the statement that he felt that such an agreement was bilateral and that "when the great State of New York enters into some sort of agreement with a property owner of this State, that some credit or faith ought to be given to that agreement." The case was closed and decision reserved.

Later, without any of the usual formalities, the Trial Judge wrote a letter in which he stated that he was reopening the matter on his own motion for the express purpose of receiving as claimants' exhibits, all of the papers involving the "Offer for Partial Payment". This was in the form of a letter directed to claimants' counsel with a copy to the Assistant Attorney-

General who tried the case. It was received, said the Trial Judge, with the understanding that the Attorney-General had an objection to its admission, which was overruled and an exception granted to him. Until then, claimants had never tried to invoke any claim of settlement.

Thus, none of the parties had any opportunity to move, offer additional testimony or protect themselves in any way against the result of the reopening. If evidence of the appraisal upon which the Superintendent of Public Works based his offer of partial payment had been before the court, the State would have had the right to explain any errors therein. (Richardson, Evidence [9th ed.], § 306 and cited cases.) During the discussion on the admissibility of testimony as to the agreement, the State took the position that there had been a serious mistake in the original appraisal by the Public Highway Department by failing to realize that a " lift pump " would be necessary for the highest and best use. The claimants admitted such necessity. No opportunity was given to explain this. It was possible that claimants might have wanted to examine the State's original appraiser, not on the theory that his appraisal was binding on the State but simply to produce his expert opinion of value and to show that the State had received a higher appraisal than the one used. None of these privileges was afforded the parties. In this connection, it should be observed that upon the trial the State's expert testified that the total damage amounted to $27,500. This is in marked contrast to its earlier appraisal of $60,700, which was the basis of the partial payment.

The claimants presented proposed findings based not in any degree upon the theory of breach of a settlement agreement but merely upon the claimants' expert's testimony of value. The amount requested by the claimants was $60,200.43. Nevertheless, the Trial Judge awarded $60,700, the precise amount mentioned in the agreement, and stated: " It is on this basis [after referring at length to the partial payment agreement], together with evidence by the claimants' expert, that I have found  *  *  *  damages."

It is obvious that the testimony of the claimants' expert had little to do with the determination and that the award was based solely upon the agreement. This decision was not only in contravention of the very language of the agreement to the effect that the amount stated therein should not be evidence of the value of the claim or of the property in any trial, but that provision was completely disregarded. Not only was the agreement violated but the receipt of the evidence was contrary to the well-accepted general rule that an offer of settlement or an

offer of purchase is inadmissible to show market value. (*Hopkins* v. *State of New York*, 276 App. Div. 945; 4 Nichols, Eminent Domain [3d ed.], § 12.311[2], p. 88; Richardson, Evidence [9th ed.], § 303 and cited cases; 31A C. J. S., Evidence, §§ 285, 288.) CPLR 3219 is of interest. It provides for a tender by a party and the effect thereof. The section concludes: " A tender shall not be made known to the jury."

As the Trial Judge observed, the contract was bilateral and binding upon both parties. (*O'Brien* v. *State of New York*, 13 A D 2d 885; *Menna* v. *State of New York*, 10 A D 2d 753; *Morey* v. *State of New York*, 283 App. Div. 562; *Amity Operating Co.* v. *State of New York*, 207 Misc. 830.) The binding effect extends to the entire agreement and not only that part which claimants desire to invoke.

In *Lieberthal* v. *State of New York* (22 A D 2d 831, 833, affd. without opn. 16 N Y 2d 1012), the court said: "We find it unnecessary to decide the question of the introduction in evidence of the advance payment as the State failed to object at the trial and from reading the record, it obviously played no part in the decision of the court. The State, of course, has the right to make an advance payment to a claimant without prejudice to the rights of the parties subsequently decided on the trial."

The Trial Judge found, as a matter of law, that once such an agreement had been executed, which by its terms reserved to the claimants the right to proceed, and before the trial of the claim claimants desired to accept the full benefits of the agreement, the State could not then fail to complete the agreement. The statement of the Trial Judge that before trial the claimants decided to accept the full benefits of the agreement is not supported by the record. Furthermore, the "full benefits" of the agreement were to receive partial payment, nothing more.

The fundamental mistake of the Trial Judge was in considering this partial-payment agreement as a settlement agreement. It was not. It was prompted by the fact that the parties had been unable to agree upon a settlement.

If the decision of the Trial Judge should be sustained, it could be very seriously harmful and far-reaching in consequence. The entire philosophy and purpose of subdivision 13 of section 30 is to mandate offers of partial settlement and, concomitant with this philosophy, is the theory that the offers should be fair, honest and reasonable. All of this could be frustrated and thwarted if partial-settlement offers are to be permitted in evidence and used as a basis for determination of value, despite the language of the section and the reason which prompted its

enactment. It was thought that proper and adequate offers under this section, made after a proposed compromise had not come into fruition, would be beneficial to both parties — to the claimants by way of the receipt of funds without awaiting the necessity of a judicial determination — to the State by the elimination of certain interest payments. No construction of this section should discourage either settlement negotiations or partial payments based on fair offers by the Superintendent of Public Works.

The judgment should be reversed and a new trial granted.

BASTOW, GOLDMAN, DEL VECCHIO and MARSH, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted, without costs of this appeal to either party.