OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
Upon the trial of the above-entitled appropriation claim, the court was faced with the ongoing problem presented when a request is made at trial to produce a prior unfiled appraisal of the subject property prepared by an expert not called as a witness. In an attempt to clarify the court’s rationale for allowing the production of such a report and receipt into evidence of the appraised compensation set forth therein, the court deems it appropriate to set forth its analysis in this separate opinion.
At trial, the court allowed the claimant to inquire into the existence and use of prior unfiled appraisal reports of the subject property, despite the fact that no pretrial discovery proceedings were held in this regard. The State contended that to allow an inquiry into this matter at the time of trial was inappropriate, since to do so would circumvent a proper judicial determination regarding any privilege that may have attached to the prior appraisal by reason of its being used for negotiation and settlement purposes. (See Swartout v State of New York, 44 AD2d 766.)
While the court agrees that it would have been preferable to have had a pretrial discovery here (Bishop v State of New York, Ct. of Claims, March 7, 1977, De Iorio, J.), there is no requirement that an item of evidence be the subject of such a proceeding, prior to its being offered on trial. Of course, before the item can be received, the party must lay a foundation sufficient to establish its relevancy and, in a case such as this, a foundation sufficient to rebut an assertion of privilege. (Matter of City of New York [Brooklyn Bridge Southwest Urban Renewal Project], 50 Misc 2d 478.) In determining the sufficiency of the foundation, the court is, by necessity, ruling on the very same issues that would have been presented on a pretrial discovery proceeding. Thus, the State is given the opportunity to present its objections to the production and receipt of the disputed items and the entire matter is afforded *683 judicial review. Hence, the State has not forfeited any of its rights and is not prejudiced thereby.
In the present case, it was established that there was a prior unfiled appraisal of the subject property prepared by an expert not called as a witness, in which the appraised compensation was substantially in excess of that found in the filed appraisal. Although the prior appraisal had been used for negotiation and settlement purposes, it had also been used to prepare a request for Federal reimbursement of moneys expended in the acquisition of the property. In addition, the State retained the prior appraisal in order to justify the request in the event of a Federal audit. These facts established that the prior appraisal had been used for purposes other than negotiation and settlement and, hence, was not privileged. (Barnes v State of New York, 67 AD2d 1065; Erie Lackawanna Ry. Co. v State of New York, 54 AD2d 1089; Niagara Falls Urban Renewal Agency v Clifton Holding, 43 AD2d 900; Manwaring v State of New York, 72 Misc 2d 486, affd 44 AD2d 778; Matter of City of New York [Brooklyn Bridge Southwest Urban Renewal Project], supra.) Accordingly, the court directed the production of the prior appraisal.
The State, however, objected to the receipt into evidence of the amount of the appraised compensation found therein on the ground that it did not constitute an admission against its interest. Testimony had been elicited which revealed that the reimbursement request submitted to the Federal Government was for a lesser sum than that found in the prior appraisal. Hence, it was argued that the State never adopted or vouched for the opinion contained in the report.
The State’s position was held to be unfounded, in view of the various uses to which the prior appraisal report had been put. These uses clearly demonstrated that the State had considered the prior appraisal an accurate indicator of the subject’s value and had adopted it for use in dealing with a third party. This being the case, it constituted an admission against the State’s interest. (Cf. Barnes v State of New York, supra.)
The State further objected to the receipt of such evidence on the ground that it was barred by paragraph "7” of the "Agreement for Advance Payment” entered into between the parties.[1] This sets forth in pertinent part: "It is further agreed *684 that in any trial of a claim that may be filed by the Claimant, neither the determination of the Commissioner of Transportation, as hereinabove set forth, nor any data, estimates or appraisals made or prepared in support thereof, shall be evidence of the value of the claim or of the property affected by said claim.”
An "Agreement for Advance Payment” is not to be construed as a settlement agreement. (Brummer v State of New York, 25 AD2d 245.) It is a creature of statute (see L 1971, ch 1155, § 9, repealed L 1977, ch 840, § 40) that arises only because the parties are unable to reach a settlement. As such, it does not possess the prerequisites of a legally binding contract. Essential to a valid contract is a meeting of minds with respect to the nature and extent of the obligations assumed by each party, manifested by an assent to mutually agreeable contract terms. (6 Simpson & Duesenberg, Encyclopedia of NY Law, Contracts, §§ 201, 231; 9 NY Jur, Contracts, §§ 15, 16; 1 Williston, Contracts [3d ed], §§ 12, 18; 17 CJS, Contracts, § 30.) The agreement, however, was not the product of a meeting of the minds, since it was not reached through free and open bargaining by the parties. The State, pursuant to subdivision 13 of section 30 of the Highway Law (L 1971, ch 1155, § 9, repealed L 1977, ch 840, § 40), was required to offer the claimant a sum equal to 100% of the amount it determined to be the value of the property. The claimant, pursuant to that section, was required to accept the proposed agreement, in its entirety, on penalty of forfeiture of interest. Under such circumstances, it can hardly be said that there was an assent to the formation of the agreement itself, much less than an assent to mutually agreeable terms. (See Perosio v State of New York, Ct. of Claims, Oct. 5, 1978, Hanifin, J.; Johnson v State of New York, Ct. of Claims, Aug. 15, 1978, Moriarty, J.)
Moreover, such agreements lack consideration in the traditional sense. Consideration has been generally defined as a legal detriment to one contracting party that results in a corresponding legal benefit to the other. (6 Simpson & Duesenberg, Encyclopedia of NY Law, Contracts, §§ 401, 402; 9 NY Jur, Contracts, §§ 72, 76; 1 Williston, Contracts [3d ed], §§ 102, 102A, 103; 17 CJS, Contracts, § 70.) A legal detriment does not result from the performance, or a promise to perform, a preexisting legal duty (6 Simpson & Duesenberg, Encyclopedia of NY Law, Contracts, §§ 447, 448; 9 NY Jur, Contracts, § 97; 1 *685 Williston, Contracts [3d ed], § 132; 17 CJS, Contracts, § 111). Here, as stated, the State was obligated by statute to pay the claimant 100% of what it determined to be the value of her property. Hence, the payment, in and of itself, was not a legal detriment sufficient to constitute consideration. Further, the State forfeited none of its rights because the claimant chose to proceed to trial. (Lieberthal v State of New York, 22 AD2d 831, affd 16 NY2d 1012.) Hence, there was no legal detriment to the State in this sense either. Neither is the payment a legal benefit to the claimant. Acceptance of the advance payment compensated her only for the estimated value of the property of which she was now bereft.
The court recognizes that, under certain circumstances, terms of an "Agreement for Advance Payment” have been enforced. In such cases, however, the holdings did not depend on the application of general contract principles. Rather, the results in each were independently supported on other grounds. Thus, in Oriskany Dev. Corp. v State of New York (63 AD2d 1082, mot for lv to app den, 46 NY2d 713) and Brummer v State of New York (25 AD2d 245, supra) clauses similar to the one found here were enforced, but only when doing so was coextensive with the application of the privilege attaching to an "Agreement for Advance Payment”. In Depo & Sons v State of New York (58 AD2d 1002) a clause in an "Agreement for Advance Payment”, requiring the claimant to repay the difference between the amount awarded and the greater amount received in advance payment, was upheld. This holding, however, was supported by the Highway Law. (L 1971, ch 1155, § 9, repealed L 1977, ch 840, § 40.) The intent of this statute was that the State’s position at trial was not to have been prejudiced by the tendering of an advance payment.[2] (Lieberthal v State of New York, supra.) Additionally, the holding was supported in equity, in that the failure to enforce the contract would have resulted in unjust enrichment to the claimant. Also noted, is the concurring opinion of Judge Meyer in Ebbets v State of New York (47 NY2d 973) in which it was implied that a clause in an "Agreement for Advance Payment”, shortening the period under which a claim may be filed, was binding on the parties. A review of the record on *686 appeal, however, reveals that the issue of the validity of the agreement was never raised. Moreover, the majority of the court did not rely on the terms of the agreement for its result.
In sum, the court does not believe that an "Agreement for Advance Payment” is enforceable under general contract principles, for in reality, it is no contract at all. This being the case, its terms should only be upheld where they are predicated upon a statutory right or mandate, or where they would be supported by pre-existing and independent principles of law or equity. Such was not the case here.
Even assuming, arguendo, that the court considered the agreement to have been a valid contract, it would not have been enforceable. This was so, first, on equitable grounds, since the agreement worked to the prejudice of the claimant and was the product of an unequal bargaining position. The claimant could not have refused to let the State take her property and had no choice but to accept all the terms of the "Agreement for Advance Payment” lest she have risked forfeiture of interest on the amount of the offer. (See Johnson v State of New York, Ct. of Claims, Aug. 15, 1978, Moriarity, J., supra.) Pursuant to section 2-302 of the Uniform Commercial Code, sales contracts will not be enforced where a party’s rights are prejudiced by a gross inequality of bargaining power. The court believes that this principle is sufficiently grounded in the common law to be extended to the present case. (See Albert Merrill School v Gody, 78 MisC 2d 647; Triple D & E v Van BurEn, 72 MisC 2d 569, affd 42 AD2d 841; Restatement, Contracts, § 367; see, also, Johnson v State of New York, supra.) It should be noted, however, that inequality of bargaining position, alone, is insufficient to render a contract unenforceable. In order that this be the result, it must be coupled with contract terms that are unreasonably favorable to the other party. (Rodriguez v Nachamie, 57 AD2d 920; Williams v Walker-Thomas Furniture Co., 350 F2d 445.) This was the case here.
A second reason for not having enforced the disputed clause was that it purported to totally pre-empt the court from its consideration of legally competent evidence. It has been held that contract clauses which attempt to oust the court absolutely of this right, are void as against public policy. (Trustees of Leake & Watts Orphan House in City of N. Y. v Hoyle, 79 Misc 301; 8 Simpson & Duesenberg, Encyclopedia of *687 NY Law, Contracts, § 2504; 10 NY Jur, Contracts, § 160; 17 Am Jur 2d, § 198; 17 CJS, Contracts, § 225.)
A third reason for not having enforced the subject clause was found in the Highway Law itself. (L 1971, ch 1155, § 9, repealed L 1977, ch 840, § 40.) The unequivocal intent thereof, was that the acceptance of the offer of advance payment shall in no way have prejudiced the claimant’s right to file and prosecute a claim. (Lieberthal v State of New York, 22 AD2d 831, affd 16 NY2d 1012, supra.) If clauses such as the disputed one were enforced, the State would be in a position to dictate, contractually, what evidence could or could not be considered at trial. If this were allowed, it would effectively negate a claimant’s right to pursue his claim without prejudice.
Finally, the court notes that support for its opinion, herein, is found in section 304 (subd [A], par [4]) of the recently enacted Eminent Domain Procedure Law. This section, applicable to all eminent domain proceedings commenced after July 1, 1978, states: "The right of the condemnee to the advance payment shall not be conditioned on the waiver of any other right.” This clause recognizes the injustice of allowing the State to tack on additional requirements to an "Agreement for Advance Payment”, at its pleasure.

. This paragraph, alone, was offered and received into evidence.

. The court notes that the repayment of the difference between the advance payment and the award subsequently made by the court has now been incorporated into the Eminent Domain Procedure Law, applicable to all eminent domain proceedings commenced after July 1, 1978. (EDPL, § 304 [HI.)