■ JAMES A. HUFNAGEL, Respondent, v CAROL BRUNS, Appellant.—Judgment, Supreme Court, New York County (David Boehm, J.), entered May 10, 1988, following a nonjury trial, which, *inter alia,* declared the agreement between the parties of November 15, 1985 legally unenforceable and dismissed defendant-appellant's counterclaim, and which awarded plaintiff-respondent judgment on the complaint to the extent of directing a sale of the shares and proprietary lease of the subject cooperative apartment, and which directed that appellant reimburse respondent for certain expenses related to the property out of her one-half share of the net proceeds of the sale, unanimously modified, on the law and the facts, to strike paragraphs 7 (c) and (d) of said judgment, and otherwise affirmed, without costs.

In February 1976, plaintiff-respondent purchased the subject cooperative loft at 134 Greene Street in the Soho district of Manhattan. The 3,000-square-foot loft had previously been used as commercial space and contained only cold running water. Respondent, an author specializing in home improvement books, converted the loft into a residential apartment at a cost of $25,563 for materials and labor. Most of the work, however, was done by respondent with substantial assistance from appellant. In mid-1976, appellant and her daughter moved into the loft with respondent. In 1978, respondent made a gift of a one-half interest in the cooperative shares and rights to the proprietary lease to appellant and the parties obtained a $25,000 mortgage on the apartment. This mortgage loan was repaid when the parties obtained a $100,000 mortgage in March 1985. The proceeds of that mortgage, after payment of the original mortgage, the remodeling costs and other debts, were deposited in the parties' joint bank account.

Although the parties never married, they lived together with appellant's daughter as a family until September 1985, when respondent moved out of the apartment and into a hotel. Respondent, however, continued to have access to the apartment and, apparently, his relationship with appellant remained cordial. On November 15, 1985, the parties signed an agreement which they had drafted without counsel, whereby they agreed to try to sell the apartment for not less than $600,000 before June 1986, and to divide the proceeds of sale equally. Respondent also agreed to pay appellant $30,000,

representing appellant's share of the balance of the $100,000 mortgage, and also to pay appellant's reasonable living expenses until September 1986. However, in March 1986, after respondent commenced this lawsuit, appellant changed the lock on the apartment and prevented respondent from reentering. Thereafter, respondent ceased making support payments to appellant. Appellant has had exclusive occupancy of the loft since that time and, beginning in September 1986, has made the mortgage and maintenance payments.

Supreme Court granted respondent's request for a judicially ordered sale of the apartment and rejected appellant's counterclaim for enforcement of the parties' November 15, 1985 agreement. The court properly found that this agreement was not supported by any valid consideration from appellant, given that she was legally obligated as a joint tenant to cooperate in the efforts to sell the jointly owned property (RPAPL 901; *Cronk v State of New York,* 100 Misc 2d 680, 684-685 [Ct Cl 1979]). Given that the agreement was executed after the parties' relationship had deteriorated and they had ceased living together, we cannot credit appellant's claim that it was supported by other consideration—her love, affection and domestic services—which had been rendered in the past. Moreover, the record supports the court's finding that appellant breached the agreement by rejecting offers in excess of $600,000 for the loft which she received from two real estate brokers.

On appeal, appellant contends that the court should not have ordered that the loft be sold because it is possible for the space to be partitioned and made into two separate units. This is directly contrary to the position taken in appellant's answer, wherein she admitted that division or partition of the premises was "physically impossible" and would cause "great prejudice to the parties", as respondent alleged. Given the evidence regarding appellant's finances, it is not clear how she could afford to pay the cost of dividing the apartment; nor is it certain that the cooperative board would approve the division of the loft.

The court also correctly found that upon the ouster of respondent from the apartment, appellant became liable for all charges assessed against the property *(Worthing v Cossar,* 93 AD2d 515 [4th Dept 1983]; *Topilow v Peltz,* 25 AD2d 874 [2d Dept 1966]). Consequently, real estate taxes were properly excluded from the portion of the maintenance payments to be credited to appellant. Also as a consequence of the ouster, respondent was entitled to receive one half of the rental value

of the apartment *(Worthing v Cossar, supra; Scacchetti v Lonobile,* 97 AD2d 966 [4th Dept 1983]). The record supports the court's finding that $4,000 per month was the fair rental value of the 3,000-square-foot loft located in the Soho district.

We do not, however, agree with the court's award of a credit to respondent for half of the maintenance payments which he made between April 1, 1978 and March 1, 1986.* The evidence establishes that during the time that appellant and respondent lived together, respondent voluntarily paid all of appellant's expenses, including those associated with the cooperative loft. Respondent continued to do so even after he had left the apartment until the time he was locked out by appellant in March 1986. There is no evidence that appellant ever agreed or was expected to reimburse respondent for her living and other expenses. This award is therefore without basis in the record.

We also find that the court erred in awarding respondent a credit for one half of the costs incurred in renovating the loft. The court found that the $100,000 mortgage was used to pay the remodeling costs and other miscellaneous debts. Appellant has been paying the principal and interest on this mortgage since respondent ceased making payments. Moreover, the court ordered that the property be sold subject to this second mortgage. The award of one half of the improvement costs to respondent would, therefore, compensate him for expenditures already recovered. Consequently, paragraph 7 (d) must be stricken as well as paragraph 7 (c) of the judgment. We have reviewed the other issues raised in the appeal and find them to be without merit. Concur—Asch, J. P., Kassal, Rosenberger, Wallach and Rubin, JJ.

---

* The judgment appealed from was amended by order of Supreme Court entered May 30, 1989 to strike paragraph 7 (b) which awarded respondent a credit for one half of the mortgage payments he made between May 1, 1985 through September 1, 1986. The court's decision contained no direction or finding regarding such a credit to respondent.