N.F.L. INSURANCE LTD. (In Liquidation), By David E.W. LINES and Peter C.B. Mitchell, Joint Liquidators, Plaintiff,

v.

B & B HOLDINGS, INC., f/k/a St. Louis Football Cardinals, Inc., d/b/a Phoenix Cardinals, the Chicago Bears Football Club, Inc., d/b/a the Chicago Bears, Dallas Cowboys Football Club, Ltd., J.W.J., Corp., general partner and/or Dallas Cowboys Football Club, Inc., d/b/a the Dallas Cowboys, Indianapolis Colts, Inc., d/b/a the Indianapolis Colts, Kansas City Chiefs Football Club Inc., d/b/a the Kansas City Chiefs, K.M.S. Patriots, L.P., Victor Kiam, II, Fran Murray, general partners, d/b/a the New England Patriots, Los Angeles Rams Football Co., Inc., d/b/a the Los Angeles Rams, Miami Dolphins, Ltd., Robbie Sports Corp., South Florida Sports Corp., general partners, d/b/a the Miami Dolphins, Minnesota Vikings Football Club, Inc., d/b/a the Minnesota Vikings, Philadelphia Eagles Football Club, Inc., d/b/a the Philadelphia Eagles, Pittsburgh Steelers Sports Inc., d/b/a the Pittsburgh Steelers, San Francisco Forty–Niners, Ltd., the San Francisco Forty–Niners, Inc., general partner, d/b/a the San Francisco 49ers, Seattle Seahawks, Inc., d/b/a the Seattle Seahawks, Tampa Bay Area NFL Football, Inc., d/b/a the Tampa Bay Buccaneers, NFL Management Council Inc., the National Football League, Paul Tagliabue, Commissioner, William Bidwill, John M. Donlan, Susan T. Fletcher, Harry T. Gamble, Ward E. Holland, Robert Irsay, Michael E. Lynn,

III, Michael McCormack, John Nordstrom, Theodore Phillips, John Schoemer, Keith Simon, Donald Steadman, Patrick Sullivan, Dennis P. Thimmons, Jerome R. Vainisi, and J.A. Zygmunt, Defendants.

No. 91 Civ. 8580 (PKL).

United States District Court,
S.D. New York.

Jan. 26, 1995.

Shearman & Sterling, New York City, for plaintiff (Dennis P. Orr, David Sorokoff, and Patrick J. Corcoran, of counsel).

Mudge Rose Guthrie Alexander & Ferdon, New York City, for defendants (Harold G. Levison, Michael C. Harwood, and Elizabeth I. Hook, of counsel).

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff N.F.L. Insurance Ltd. ("NFLIL"), represented by its liquidators, brings this action against fourteen teams of the National Football League (the "NFL"), the NFL, the NFL Management Council ("NFLMC"), and seventeen members of NFLIL's Board of Directors. NFLIL is a Bermuda mutual insurance company and was organized as part of a program to self-insure the participating teams' workers' compensation risks, including the risk of player injuries. NFLIL seeks to recover $4,734,871 in contributions the company allegedly is owed by the participating teams. NFLIL further seeks damages for defendant directors' alleged breaches of fiduciary duties. Defendants now move this Court for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants also assert a counterclaim for the return of contributions by some teams, allegedly placed in escrow by NFLIL pending a decision by the other teams as to whether to contribute. For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

This Court previously summarized a majority of the background facts relevant to the instant action in its Opinion and Order, dated

March 18, 1993 (the "Opinion"), and this section merely reviews much of what was stated in the analogous section of the Opinion. In 1984, defendants created NFLIL as a "captive" mutual insurance company in Bermuda pursuant to a plan to self-insure their players and employees for employment-related injuries. The Bermuda captive company was formed to reinsure the teams' workers' compensation insurance. Each NFL team that obtained workers' compensation insurance through the program became a "member" of the mutual company.

NFLIL contracted with various insurers, including at various times The Home Insurance Company, The Travelers Insurance Company, The Travelers Indemnity Company, and The Travelers Indemnity Company of Illinois, to act as "fronting" companies. The fronting company wrote the insurance policies for the various teams' workers' compensation insurance plans. NFLIL then reinsured the primary layer of risk of the policies issued by the fronting companies to the participating members of the captive. The members of the captive paid premiums directly to the fronting company. The fronting company then passed the premium received on to NFLIL, less a deposit held by the fronting company, reimbursement for amounts paid by the fronting company to reinsure risk in excess of the primary layer, commissions, and certain taxes. The reinsurance agreements obligated NFLIL, within certain limitations set forth in the agreements, to reimburse the fronting companies for claims paid to injured employees of the participating teams.

Starting in 1987, Fred S. James (New York) ("James") and its Bermuda subsidiary, James (Bermuda), served as NFLIL's insurance broker and Bermuda managing agent. NFLIL was originally capitalized with a reserve fund of $250,000, which was subsequently increased to $314,000. By June 30, 1987, however, NFLIL's balance sheet showed a reserve fund of $432,000 and a members' deficit of $1,504,955. Over the course of 1988, the members contributed $1,998,834 to NFLIL in an effort to ensure that it remained solvent. On February 9, 1989, Arthur Andersen & Co. reported that NFLIL had a significant deficit with respect to the fiscal year ending June 30, 1988. The report showed a deficit of $3,692,000 as of June 30, 1988. In response, NFLIL's agent sent a letter to the Bermuda Registrar of Companies on February 8, 1989, seeking an extension of NFLIL's time to file its Statutory Financial Return.

On or about March 1, 1989, eleven NFLIL members or directors attended a meeting (the "Meeting") at which, plaintiff contends, it was decided that the members would need to contribute $4,734,871 in new capital in order to remedy NFLIL's deficiency. Plaintiff alleges that the actions taken at the Meeting constituted a valid contract between the members and the NFLIL. In the alternative, plaintiff claims that the members entered into a contract among themselves, with the NFLIL as an intended third party beneficiary to that contract. Of the $4,734,871 that allegedly was promised at the Meeting, only $595,773 actually was paid by participating teams. Moreover, defendants allege that those funds that were paid, were to be held in escrow until each member of NFLIL contributed its just share of the additional capital.

Thereafter, NFLIL became the subject of a winding-up proceeding in the Bermuda Supreme Court. On September 26, 1991, David E.W. Lines and Peter C.B. Mitchell were appointed joint liquidators of NFLIL. The liquidators calculated the members' deficiency on the date the winding-up proceeding was commenced as being in excess of $14 million. On December 20, 1991, the liquidators purported to issue a call on the participating teams in the aggregate amount of $14,508,708. On the same day, the liquidators filed this action.

The original complaint contained five counts: counts I and II were based on language of the Bermuda Companies Act ("BCA") applicable to mutual companies; count III was based on BCA provisions applicable to non-mutual companies; count IV alleged breach of contract; and count V alleged breach of fiduciary duty. In the Opinion, this Court dismissed, in their entirety, counts I, II, III, and IV, but plaintiff was granted permission to replead the fourth

cause of action. Plaintiff was further granted permission to supplement the fifth cause of action to describe with greater specificity the directors' alleged breach of their fiduciary duties.

On April 19, 1993, plaintiff served an amended complaint seeking to recover under four causes of action. First, plaintiff seeks to recover from the participating teams for breaching their purported contract with NFLIL. Second, plaintiff alleges that the member teams breached their contract to each other, to the detriment of the intended third party beneficiary, NFLIL. Third, plaintiff asserts that the directors and officers of NFLIL breached their fiduciary duty to the company by failing to enforce the March 1, 1989 contract. Finally, plaintiff seeks recovery from the directors and officers of NFLIL, for breaching their fiduciary duty by allowing NFLIL to conduct business when insolvent.

## DISCUSSION

### I. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.*, 974 F.2d 241, 245 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir.1991); *see also Lang*, 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, the burden then shifts to the nonmoving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.*,

987 F.2d 142 (2d Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations and quotation omitted); *see also Gnazzo v. G.D. Searle & Co.,* 973 F.2d 136, 138 (2d Cir.1992) (the court must "consider the record in the light most favorable to the non-movant. However, the non-movant may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). The Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. Di Mauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

## II. *Contract Claims*

### A. *Contract Between Teams and NFLIL*

#### 1. *Condition Precedent*

The crux of plaintiff's contractual claims hinges on the assertion that, at the March 1,

1989 Meeting, or soon thereafter, the members of the NFLIL entered into a binding contract to fund the deficit incurred by the NFLIL. Plaintiff alleges that all fourteen teams, the NFL, and the NFLMC entered into a contract with NFLIL, obligating *them* to contribute $4,734,871 to NFLIL. Under both New York and Bermuda law, the general requisites for formation of a contract include offer, acceptance, and consideration. *See* Restatement (Second) of Contracts §§ 24, 50, 71 (1981). As this Court has held, "the complaint must allege the formation of an agreement, its terms and consideration, the plaintiff's willingness to perform, breach of the contract, and damages." Opinion at 17; *see also Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.,* 129 A.D.2d 927, 929, 514 N.Y.S.2d 1002, 1003 (3d Dep't 1987). The Federal Rules of Civil Procedure mandate that a complaint must only satisfy the minimum requirements of "notice pleading." *See Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin,* 700 F.2d 37, 43 (2d Cir.1983); *Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 21 (2d Cir.1982). This Court finds that plaintiff has met the minimum notice requirements dictated by the Rules, with the possible exception of a failure to allege adequately mutual consideration.[1]

The principal question before this Court, however, is whether plaintiff has sufficiently alleged facts adequate to withstand defendants' motion for summary judgment. Preliminarily, this Court must assess whether material issues of fact exist concerning the contract allegedly entered into at the Meeting. Due to financial losses, stemming predominantly from high costs, the Meeting was scheduled, in March 1989, for all former and present member teams. Defendant mem. at 17. Those attending the Meeting included seven NFLIL member teams, two former NFLIL member teams, representatives of the NFL, and a representative of James.[2]

---

1. For reasons detailed below, there is a question as to whether plaintiff has sufficiently alleged that defendant received a benefit or that there was a detriment to plaintiff. But, also for rea-

sons discussed below, this Court need not reach the issue of consideration.

2. Owen Kaplan attended the meeting representing James, but left before his ideas about the

Specifically, it was attended by the: Chicago Bears, Phoenix Cardinals, Miami Dolphins, Philadelphia Eagles, San Francisco 49ers, New England Patriots, Pittsburgh Steelers, Minnesota Vikings, the NFL, and James.[3] *Id.* Six teams, the Tampa Bay Buccaneers, Kansas City Chiefs, Indianapolis Colts, Dallas Cowboys, Los Angeles Rams, and Seattle Seahawks were not represented at the Meeting. *Id.*

■ Defendants assert that there is no issue of material fact concerning the question of whether a contract was formed at the Meeting. Plaintiff has the burden of establishing all essential terms of the alleged contract, with sufficient definiteness that the Court can interpret its terms. Plaintiff must also establish that there was a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound. *Cf. Cronk v. State,* 100 Misc.2d 680, 684, 420 N.Y.S.2d 113, 116 (Ct.Cl.1972). Defendants note that, as of March 1, 1989, there were ten present and five former members of NFLIL. They further note that only seven present and two former teams attended the Meeting. Defendants assert that all but two of the representatives attending the Meeting had

no authority to bind their teams. Defendant mem. at 31.[4]

Defendants present evidence that tends to indicate that those attending the Meeting understood that there was no intention, at the Meeting, to bind all of the teams to a contractual commitment, and plaintiff produces evidence that purports to show that those attending the Meeting did understand that they were contractually binding themselves.[5] The Court, however, notes that questions regarding the creation of a contract are resolved by the absence of certain teams from the Meeting.[6] In particular, the Tampa Bay Buccaneers, one of the teams absent from the Meeting, sent a letter, prior to the Meeting, specifically advising that the Buccaneers would not be bound by anything agreed to at the Meeting. *See* Affidavit of Michael C. Harwood, Esq., in Support of Defendants' Motion for Summary Judgment, dated June 16, 1993 ("Harwood aff."), at ex. 61. Defendants argue, and this Court finds, that under the theory alleged by plaintiff, the consent of all of the member teams of NFLIL was required for any one team to be bound. In other words, unanimous consent was required, as a condition precedent, for the member teams to have been obligated to

future plans of the captive were discussed by the teams present. Affidavit of Patrick J. Corcoran, Esq., in Opposition to Defendants' Motion for Summary Judgment, dated August 13, 1993 ("Corcoran aff."), at ex. 32.

3. *See* Corcoran aff. at ex. 32. Five teams dropped out of the NFLIL in July 1988. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendant mem.") at 14 n. 10. These teams include the: Buccaneers, Chiefs, Colts, 49ers, and Patriots. *Id.*

4. Plaintiff produces no evidence specifically showing that those present at the meeting had the authority to bind the member teams that they represented. In addition, plaintiff produces no evidence that directly rebuts the deposition testimony of Michael Lynn ("Lynn"), who asserts that "all but two of the people attending [the Meeting] had *no* authority to bind their teams." Harwood aff. at ex. 64, Lynn Dep. at 58–59, 62–63. Rather, plaintiff relies exclusively on the documentary evidence, reviewed by the Court later in this opinion, that purports to show that an agreement had been reached.

The Court notes that even if it were to conclude that an agreement was entered into at the

Meeting, it would not be able to conclude, simply from the formation of that agreement, that material issues of fact exist concerning whether those present had the authority contractually to bind their teams. Defendants present convincing evidence indicating that all but two of the representatives at the Meeting had no authority to bind their teams, and plaintiff cannot merely conclusorily assert that authority must have existed because an agreement was reached. *See* Defendant mem. at 31; Plaintiff mem. at 25–27. Such reasoning is circular. Nor can plaintiff place the issue in doubt simply by attacking the credibility of Lynn, without producing any affirmative evidence.

5. As will be reviewed in the section that follows, the evidence adduced by plaintiff merely demonstrates, at most, an agreement to agree, insufficient by itself to bind defendants contractually.

6. The Los Angeles Rams and the Tampa Bay Buccaneers, two teams not in attendance at the Meeting, were responsible, according to plaintiff itself, for respectively, $1,218,243 and $1,372,383 of the deficit. Amended Complaint at ¶ 74. This amounts to $2,590,626 of the total $4,734,871 that plaintiff alleges was promised at the Meeting.

perform under the contract purportedly entered into on March 1, 1989.

■ "A *condition* ... is 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'" *Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.,* 61 N.Y.2d 106, 112, 472 N.Y.S.2d 592, 596 (1984) (citations omitted). If the condition does not occur, or if the time for performance passes so that it becomes too late for the condition to occur, then the agreement is terminated. *See, e.g.,* E. Allan Farnsworth, *Contracts,* § 8.3 at 570 (2d ed.1990). Defendants assert that each team's alleged promise to contribute was expressly conditioned on every other team not only agreeing to contribute but actually paying its contribution.

■ It is undisputed that only four teams ever contributed, and the four contributions were placed in an account and were not disbursed to NFLIL for the company's use. *See* Amended Complaint at ¶ 66. This Court finds that participation by all members was a condition precedent to the performance of any obligation on the part of the members of NFLIL, and that the condition precedent did not occur.[7] The Court notes that the same arrangement was entered into by the parties in 1988, when they orchestrated the funding of NFLIL's prior deficit. At that time, the members established an escrow account so that all contributing teams could recover their money if any team did not assume its share of the load. *See* Defendant mem. at 12; Harwood aff. at ex. 37A. This Court

concludes that, at most, a similar arrangement was entered into at the Meeting, and as a result of the failure of the fulfillment of the condition precedent, defendants were not obligated to contribute, even if the agreement reached at the Meeting was otherwise binding.

The failure of the condition precedent is evidenced in many ways, but nowhere more clearly than by (1) the absence of the Tampa Bay Buccaneers from the Meeting; (2) the Buccaneers' specific prior disavowal of any agreements reached at the Meeting; (3) the lack of any evidence whatsoever that the Buccaneers ever contributed to fund NFLIL's deficit or manifested, in any other manner, that they recanted their previous assertion that they would not be bound by the outcome of the Meeting.

Plaintiff argues that the existence of a condition precedent is a question of fact. Plaintiff cites, as evidence for the proposition that there were no conditions precedent, language from various contemporaneous documents that include no mention of such conditions. This Court notes, however, that none of the documents cited by plaintiff purport to be a complete record of what transpired. In fact, as will be discussed in the following section, the documents referred to by plaintiff are inadequate, as a matter of law, to establish the creation of a contract, much less the existence of a contract with no conditions precedent.

Defendants cite the deposition testimony of those who attended the conference, and that testimony clearly indicates that, at a

---

7. Evidence of the condition precedent is ubiquitous. "There were clubs not present at the meeting that would have to be brought on board." Harwood aff. at ex. 66, Curran Dep. at 134. Jenkins testified that he "told Mr. Kaplan that the teams present appear to be inclined to fund the deficit. However, there were several contingencies." Harwood aff. at ex. 67, Jenkins Dep. at 112. "What were the contingencies you just referred to? Not all the people were there, to start with ... Another thing is that the clubs want to make sure that if other clubs chose not to contribute, those that did contribute money would be held in an escrow account so they could get it back if all the clubs that were requested to contribute did not contribute." Harwood aff. at ex. 66, Curran Dep. at 114–117. "There was whether or not the numbers were

right, the fact that nobody wanted to pay unless everybody paid, so they put the money in an escrow account." Harwood aff. at ex. 66, Curran Dep. at 134. "A second contingency was that the funding, if accomplished, be done on the same basis as it had been done in 1988, meaning that the same protection, that the funding did not become complete, if you will, or a done deal until everybody contributed, and that the money be deposited in a separate, segregated escrow account." Harwood aff. at ex. 67, Jenkins Dep. at 112. "[U]nless and until all of the teams and the league contributed, that the money was not to be turned over to N.F.L.I.L., and failing contribution by all, then those that did make a contribution were to get them back." Harwood aff. at ex. 67, Jenkins Dep. at 154. *See also* Harwood aff. at ex. 4, Kaplan Dep. at 127–129, 136, 209–210.

minimum, no performance by any one member was required unless all other members performed. Plaintiff does not create a material issue of fact by indicating that documents exist that refer to an "agreement" having been reached at the Meeting or that state that it "was decided that funding would be done according to" a certain exhibit. Although the various documents quoted by plaintiff do not contain mention of conditions precedent to the contract allegedly entered into at the Meeting, such proof is insufficient to create issues of fact. The documents to which plaintiff refers are informal memoranda which do not purport to reflect the entire understanding reached at the Meeting.[8] Simply stated, the failure of the contemporaneous documents, cited by plaintiff, to mention conditions precedent is inadequate to raise a question of fact concerning the existence of such conditions.

### 2. *Existing Agreement Insufficient*

■ This Court preliminarily notes that where an alleged contract is oral, plaintiff has a particularly heavy burden to establish objective signs of the parties' intent to be bound. *See Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir.

1986). The burden is heavier in oral agreements because " '[a] primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they never intended.' " *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989) (quoting *Teachers Insur. & Annuity Assoc. v. Tribune Co.*, 670 F.Supp. 491, 497 (S.D.N.Y.1987)). " '[M]ore is needed than agreement on each detail [to create a binding obligation. There must be] overall agreement ... to enter into the binding contract.' " *Id.*

Even if this Court had found that an agreement, with no unfulfilled conditions precedent, had been reached on March 1, 1989, that agreement would not be binding on defendants because such an agreement was not an oral contract. The documents cited by plaintiff do not contain affirmative evidence that all of the teams not in attendance at the Meeting agreed to be contractually bound by the purported March 1, 1989 meeting. Similarly, such documents do not contain evidence that the members present at the Meeting contractually committed themselves to anything. Rather, the documents signal an agreement to agree.[9]

---

**8.** In fact, if the absence of information from the documents cited by plaintiff evidenced the nonexistence of that element, then this Court would have to find that there was no consideration. Only one or two of the approximately twenty documents cited by plaintiff represent that NFLIL would undertake obligations that can even arguably be conceived as consideration.

**9.** The Court cannot, in this opinion, undertake an exhaustive review of each document referred to by plaintiff, but the Court does note that the language cited by plaintiff, in the context of the documents in which such language appears, illustrates only an agreement to agree. The Court will, therefore, highlight (all emphasis is added) some of the other language in the documents cited by plaintiff which places the language cited by plaintiff in context and which demonstrates that, even if an agreement was reached at the Meeting, it was an indefinite agreement to agree rather than a binding contract. (All references are to plaintiff's exhibits appended to Corcoran aff.)
*Exhibit 32*
  "In regards to Tampa Bay Buccaneers, Curran [a NFLMC representative] stated that they were going to try to work out their losses *directly*." (In other words, they were not going to utilize NFLIL.) The author of exhibit 32 also indicates

other proposals made at the meeting and recommends that such proposals were not as good. (Such an inclusion is highly unlikely if the parties contractually bound themselves at the Meeting, but it is logical if the parties had agreed to agree on terms, to be ascertained at some point in the future.) "The group *must decide* if they want the program to continue ... It was left that *a decision would be made* regarding continuation of program after James made the renewal terms known in early April."
*Exhibit 33*
  "The four teams which did not attend were the Bucs, Chiefs, Colts and Rams. If they refuse to contribute the *issue would be taken up* at a league financial meeting on 3/20/89."
*Exhibit 34*
  "One of our *choices* would be to bankrupt NFLIL ..." "None of the participants *with the exception* of the 49ers and the Buccaneers has taken the position that they are not agreeable to paying their share of losses." "*My sense is that* even if the Buccaneers balk at handling their *$1.3 million* liability that they *will be* pressured into compliance by the league." "It was asked that all teams who have a liability *agree to settle* this liability with NFLIL *no later than March 31, 1989*. It is *my recommendation* that we make this payment."

Although the documents referred to by plaintiff allude to an agreement having been reached, certain matters having been decided, and a consensus having been reached, these documents are properly conceptualized as memorializing an agreement to agree. The documents are too vague to constitute the terms of a contract. For example, the exact obligation of each member was never specified. Plaintiff nowhere alleges that defendants agreed to contribute a sum certain. At most, defendants agreed to consider a formula that would establish what each owed. The various factors required for the operation of that formula, however, were never agreed upon. Instead, the parties left such determinations for a future date and, ultimately, they were never resolved.

The "agreement" reached at the Meeting was dependent on the future consent of the teams not represented at the Meeting and the acquiescence of the management of the teams that were represented. In other words, the agreement was contingent on the future consent of all parties. An "agreement" of this nature is not binding or otherwise enforceable. It is undisputed that at least four teams did not provide authorized consent at the Meeting, and as a consequence, the agreement reached at the Meeting may only be viewed as an unenforceable agreement to agree. *Cf. Benevento v. RJR*

*Nabisco, Inc.*, 1993 WL 126424 at *4 (S.D.N.Y. April 1, 1993) (Leisure, J.); *De Vecchi v. De Vecchi*, 34 A.D.2d 790, 311 N.Y.S.2d 530, 531 (2d Dep't 1970).

In sum, this Court finds that the evidence adduced by plaintiff is legally inadequate to establish more than an unenforceable agreement to agree. There is no evidence that the members agreed or intended to be bound.

### 3. *Absence of Meaningful Consideration*

Defendants vigorously contend that, even if this Court finds that all other elements of a contract existed and that there were no conditions precedent, the contract still fails for lack of consideration. Plaintiff equally forcefully maintains that there was adequate consideration. This Court notes that it need not reach the issue of consideration because it finds (1) there was no binding contract, and (2) even if such a binding contract did exist, defendants would still not be obligated to perform under its terms due to the nonfulfillment of conditions precedent.

The Court does observe, however, that plaintiff's claim, that there was adequate consideration for the members' alleged promise to pay over $4 million, rests almost entirely on the notion that NFLIL's purported promise not to declare bankruptcy was adequate

Exhibit 35
"In the suggested approach ..."
Exhibit 39
"Of the clubs of whom funding was required ... Tampa Bay has indicated that it will fund its losses, but would *prefer to do so outside of the captive's structure* ... Indianapolis has indicated that they have not rejected the idea of funding its past losses, but *has yet to make a final decision.* The Colts had been invited to the meeting in March, but chose not to attend. James has not informed us of any contact with either Kansas City or Pittsburgh."
Exhibit 43
"[W]e have been advised on several occasions that *negotiations with the individual teams were ongoing.* Regrettably, we have only received cash contributions from three teams, totalling $407,073, which amount we have placed in *"escrow"* as a segregated interest-bearing deposit of the Company."
The Court highlights the above sections of plaintiff's exhibits not to show that no agreement was reached but merely to demonstrate that no binding contract was created. The contemporaneous documents, which constitute plaintiff's

only evidence, clearly illustrate that no contract was created, and that at no time, did the various members believe themselves to be bound by actions taken at the meeting or events occurring thereafter. On the current record, there is no room to conclude other than that there was no meeting of the minds, manifested by an assent to mutually agreeable contract terms, and that there was no mutual assent and intent to be bound. *Cf. Cronk v. State*, 100 Misc.2d 680, 684, 420 N.Y.S.2d 113, 116 (Ct.Cl.1979).

The Court cannot review, in this opinion, each and every one of the more than 150 documents submitted by plaintiff and defendants. After scrupulously analyzing the documents that plaintiff alleges indicate that a contract was formed, this Court finds that, as a matter of law, a binding contract was not created. The language quoted above is presented to represent the infirmities, prevalent throughout the evidence adduced by plaintiff, which preclude this Court from finding otherwise. The Court concludes that a reasonable jury could not find that a binding contract was entered into between member teams and NFLIL, or among the member teams themselves.

consideration. There are serious questions concerning whether such a promise is valid consideration, given NFLIL's pre-existing obligations. There is also some question as to whether such consideration, even if entirely new, had any value to the members. Finally, there is a potential question, unaddressed by either party, concerning whether a company can contract away its right to declare bankruptcy.

### B. *Third Party Beneficiary*

Plaintiff next contends that the fourteen past and present member teams contracted among themselves, and that NFLIL was an intended third party beneficiary to that contract. This Court, for the reasons stated above, finds that no contract was entered into by the various member teams. Consequently, the Court need not determine whether NFLIL was an intended third-party beneficiary. The Court does note, however, that the existence, and non-fulfillment, of a condition precedent is even more compelling in the third party beneficiary context.

### II. *Fiduciary Claims*

### A. *Enforcement of Contract*

Plaintiff's third cause of action is one for breach of fiduciary duty arising from defendant directors' alleged failure to enforce the contract formed on March 1, 1989. This Court, having found that no contract was created during or after the Meeting, finds that defendants necessarily cannot be held liable for failing to enforce a non-existent contract.

### B. *Operating While Insolvent*

■ Lastly, plaintiff contends that it is a disputed issue of fact whether the directors acted reasonably and in good faith in performing the duty that they owed to NFLIL while it was insolvent. NFLIL alleges that the defendant directors owed a fiduciary duty to the company when the company's insolvency existed in fact. It further contends that the directors were aware of NFLIL's mounting losses and that they nevertheless kept the company in operation, in violation of their fiduciary duty.

Defendants maintain that plaintiff must establish that "the directors (1) *knew* that the company was insolvent or on the brink of insolvency, (2) allowed the company to incur further debt or greater financial obligations *after* learning of the problem, and (3) failed to take reasonable steps in response to the financial difficulties." Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendant Reply") at 25. Defendants argue that the defendant directors did not know of the financial distress of NFLIL until late 1987. They contend that the 1988–89 renewal was the only debt or financial obligation to which NFLIL became bound after November 1987, and that such obligation was only entered into after extensive inquiry, reasonable improvements, and a good faith determination that NFLIL was a viable proposition. *Id.* at 27.

This Court finds that the issues of (1) when defendant directors knew of NFLIL's insolvency, and (2) whether they acted in good faith at all times they allowed NFLIL to conduct business, are issues of fact that cannot be decided on the instant motion for summary judgment. Plaintiff has sufficiently raised questions concerning the state of the various directors' knowledge and their consequent responsibilities towards the company. As this Court stated in the Opinion, "it is possible that the directors failed to take ... actions to alleviate the company's financial problems that a reasonably prudent person would have deemed appropriate under the circumstances." Opinion at 20.

### III. *Counterclaims*

■ This Court has found that no contract was created at the Meeting, and that even if a binding agreement had been reached, it would not have obligated defendants to perform because of the non-fulfillment of a condition precedent. This Court, however, has not found, as a matter of law, that an escrow account was established for the monies that were in fact contributed by some of the teams. This Court, instead, finds that issues of fact exist concerning the status of those funds. While strong evidence seems to indicate that, due to the failure of many of the member teams to participate in funding the

deficit of NFLIL, the funds should be returned to the teams which contributed them, there is at least some evidence that the contributions were made unconditionally.

There is evidence that no formal escrow arrangement was ever established, and as defendants have succeeded in demonstrating, there was no contract entered into as a result of the Meeting. It necessarily follows, therefore, that the members did not contract to have contributions returned if all members did not participate. It is possible that the contributions were unconditional, and as such, were the property of NFLIL when it became insolvent. If this is in fact the case, however unlikely it appears, then there is a question as to who is entitled to the funds. In any event, there are sufficient factual issues to necessitate denial of defendants' motion for summary judgment on its counterclaims.

## CONCLUSION

For the reasons stated above, the Court hereby dismisses the first, second, and third causes of action in plaintiff's amended complaint. The motion for summary judgment on plaintiff's fourth cause of action and for summary judgment on defendants' counterclaims is denied.

**SO ORDERED.**