OPINION OF THE COURT
Phillip R. Rumsey, J.
The claimant Stephen S. Sautter brings this timely claim for damages arising from the permanent acquisition of land by the respondent Village of Marathon pursuant to the Eminent Domain Procedure Law.
On January 19, 1995, the Village of Marathon (Village) acquired the claimant’s premises by filing a copy of a certain acquisition map and description entitled "Lands of Stephen S. Sautter” in the Office of the Clerk of Cortland County.
*802 The court adopts the description of the appropriated property (subject) as shown on a copy of the map and description and the same is incorporated by reference herein.
The Village acquired the land for the purpose of obtaining a water source for the Village.
Counsel for both parties stipulated that the date of acquisition was January 17, 1995. They also stipulated that claimant received partial payment of $43,500 on or about February 8, 1995.
The subject consists of 22.098 acres of vacant land located on the west side of New York State Route 11, Town of Marathon, Cortland County, New York.
Throughout Cortland County there are parks, picnic sites, camping areas, modern ski centers, and golf courses. The area data reveals that the County is a recreational, residential, and agricultural community significantly influenced by the City of Cortland.
The subject has an irregular shape; the easterly line fronts on the center line of Route 11, the south line runs from the Route 11 center line to the bank of the Tioughnioga River, the west side of the subject is irregular running along the river bank, and the north line follows a drainage ditch from theTioughnioga River to the center line of Route 11. The subject is, overall, open and grass covered.
The west portion of the subject is a man-made pond which occupies an estimated seven acres of the total area.
At the time of the taking there were three steel-cased wells on the property drilled by the Village. The claimant had given permission to the Village to go upon his property and drill the wells and raised no objection to the installation of the wells.
Part of the subject is within the flood plain of the Tioughnioga River.
Claimant moved to strike the appraisal of David W. Briggs, Briggs Appraisal Service (Briggs), testifying for the Village, for noncompliance with 22 NYCRR 202.59 (g) (2). The court finds that the Briggs appraisal meets the basic requirements of the rule.
The rule states that appraisal reports "may contain photographs of the property under review and of any comparable property that specifically is relied upon by the appraiser, unless the court otherwise directs.” (22 NYCRR 202.59 [g] [2].) The Briggs appraisal contained one photograph of the subject. The failure to include photographs of the comparables is not *803 sufficient to strike the appraisal. Other errors referred to by the claimant (improper statement of acreage, and zoning) were acknowledged and corrected by Briggs at the outset or were matters (valuing improvements, calculations on sales, enhancement value, etc.) going to the weight of the appraisal and subject to cross-examination. The motion to strike is denied.
The claimant sought to enter into evidence as proof of market value, letters offering to purchase the subject. The offer to purchase was also used as a comparable (L.-4) by claimant’s appraiser.
Generally, "an offer of settlement or an offer of purchase is inadmissible to show market value [citations omitted]” (Brummer v State of New York, 25 AD2d 245, 248-249). An offer by a private party may be admissible where it is "made in good faith, within a reasonable time and with the intention and ability to carry out the transaction if the offer is accepted” (4 Nichols, Eminent Domain § 12B.04 [2] [3d ed 1981]). In this instance the testimony does not demonstrate that the offer was bona fide and that the named purchasers had the ability to carry out the arrangement. The offer to purchase claimant’s property is not accepted as independent evidence of market value.
Claimant’s appraiser’s sale L-4 is stricken[1] and the trial objections to the admission into evidence of claimant’s exhibits 3, '4 and 5 are sustained.
Generally, there are three approaches to arrive at an estimate of market value: the cost approach, the sales comparison approach (Market Data Approach) and the income capitalization approach.
In this claim, the Market Data Approach is appropriate and both appraisers valued the subject exclusively by that approach.
Claimant’s appraiser, David F. Peatfield (Peatfield), opined the highest and best use of the subject is for recreational development as a seasonal campground with a potential for a potable water supply. The present agricultural zoning allows residential and agricultural uses in addition to uses by special permit such as camping grounds (1970 Zoning Ordinance of Town of Marathon art XI). Peatfield bases his highest and best use upon the belief that a permit for a recreational use would issue, since residential development is limited by the constraints of the flood plain.
*804 Briggs found the highest and best use to be for a residential use; in his opinion the subject was not being used at its highest and best use. However, he acknowledged in his testimony that he had erroneously stated the zoning to be residential rather than agricultural. Briggs testified that a small portion of the property along Route 11 was out of the flood plain and he "felt residential development would be the highest and best use” (transcript, at 61, lines 13-18). The residential highest and best use therefore was assigned to a small segment of the subject leaving the majority of the subject without an ascribed highest and best use.
The court finds the highest and best use of the subject is for recreational development as a seasonal campground; such a use meets the four criteria generally used in determining the highest and best use: legally permissible, physically possible, financially feasible and maximum profitability. The subject lends itself to the development of a seasonal campground by its location, size and contour. Additionally from the testimony, a potential campground appears more financially feasible than its present use. Residential development is limited because of the flood plain and the presence of the pond.
Considering the findings that the Zoning Board of Appeals must make to approve a special permit, the facts presented to the court indicate that it is reasonably probable a special permit would issue for a recreational use as a seasonal campground.
The proposed use as a campground is particularly appropriate on the subject’s ample 22 acres of vacant land in an area which is essentially rural in nature. The neighboring properties reflect the same sylvan/agrarian characteristics as the subject; it is unlikely the proposed use would be unreasonably detrimental to the surrounding properties. There is no testimony that indicates the proposed use would be contrary to the comprehensive plan for the Town of Marathon. In short, it is relatively likely (although not certain) that a special permit would issue upon due consideration of the zoning ordinance factors.
In the absence of an opinion by Briggs of the highest and best use on the entire subject, and in light of the improper zoning stated, the court cannot and does not consider the sales used by Briggs in his Market Data Approach. The sales he chose would have been in line with his characterization of the subject as in a residential zone and appropriate for residential development; without the essential element of the highest and best use any value predicated thereon would not be probative.
*805 Moreover, none of the four sales Briggs relied upon in arriving at his opinion as to value had a pond on the property or fronted on a body of water. Briggs used only one sale to prove the contributory value of a pond on a parcel (sale 5). He then generally referred to "similar parcels” which led him to his opinion that a pond would warrant a 50% adjustment to his sales. However, those similar sales were not contained in the appraisal nor was any proof submitted that would validate Briggs’ opinion or permit examination/analysis of those sales.
Peatfield’s appraisal used the Market Data Approach to estimate the value of the subject base land and then added an enhancement for the potable water source ($20,000) and value of the site improvements ($15,000).
The comparable sales L-l, L-2 and L-3 indicate a range of value to the subject of $1,445 to $3,191. The court gives less weight to sale L-3 because of its heavy adjustment (net adjustment — $798/A) and its distance from the subject. From the testimony the court finds that the subject base land has a value as of the date of taking of $2,500 per acre or $55,000.
As a matter of law no enhancement is warranted for the wells drilled on the property. The Village entered and improved the premises with the approval of the claimant. There is no evidence of bad faith on the part of the Village (see, Salesian Socy. v Village of Ellenville, 121 AD2d 823) nor is there any reason to require the Village to compensate the claimant for improvements made for the public benefit, the very reason for the taking.
Peatfield, applying the accepted appraisal method, estimated an enhancement value to the subject of $20,000 for the potable water source.
The definition of potable water as used by Peatfield was "a volume of water that is appropriate for drinking, domestic use” (transcript, at 46, line 6). He testified that the water supply on the claimant’s property was unique because the Village had searched the area surrounding the Village of Marathon and found that this was the only source that met their quality and their volume. The source of the water is an aquifer.
It is beyond cavil that a condemnee is entitled to recover the fair market value of their property based upon the most advantageous use to which it could be put (see, Sparkill Realty Corp. v State of New York, 254 App Div 78, 82). In essence, a witness qualified as an expert must take into consideration all those factors which would be considered by a willing buyer and a willing seller.
*806 The issue presented herein is whether the presence of potable water on the subject is to be considered an enhancement to the subject in the same manner that valuable deposits or resources are considered (see, New York Cent. R. R. Co. v Maloney, 234 NY 208).
In one sense, the term "mineral” includes all natural inorganic substances forming part of the soil. However, this term has been used to mean a substance having sufficient value to be mined, quarried or extracted for its own sake (4 Nichols, Eminent Domain § 13.10 [1] [rev 3d ed 1997]).
We have found no New York authority that considers water as a mineral or which values potable water as an enhancement. That is not to say that potable water, under the proper proof and facts, could not be considered an enhancement in the same manner as minerals. For the purpose of this issue, the court will consider water akin to a mineral and subject to the same burden of proof.
An enhancement increment for potable water is not determined by its "uniqueness” to the property;[2] the essential issue is whether the property is increased in value because of the presence of the water.
The Village acquired the subject in order to provide a backup water supply. Clearly, the presence of potable water on the subject was the instigating factor for the taking. As a general rule, the fact that the land taken is particularly adaptable to the condemnor’s purposes has no place in valuing the property and determining compensation (51 NY Jur 2d, Eminent Domain, § 178).
There was no admissible evidence as to the quantity or quality of the potable water on the subject (see, Nichols, op. cit., § 13.10 [2]), or that it constituted a singular consideration of a willing buyer and willing seller so as to affect the market value of the subject. Consequently, the potable water did not enhance the subject.
Even if the court were to consider the presence of potable water as enhancing the subject, there was no legally sufficient evidence upon which the court can base an award.
Peatfield used two sales in which he states municipalities purchased properties with potential potable water supplies. He *807 then compared each of those two sales to four comparable sales of land that he found did not have potable water.
Sale L-12 was the purchase by the City of Cortland of 19.4 acres of land located on Saunders Road. It was purchased for a potential water tank location by the City of Cortland in May 1994. The court does not view this sale as one purchased for potential potable water on the sale but rather as a sale for the storage of the City of Cortland water supply. As such it is not a true indicator of the value of potable water as an enhancement to the land.
Sale L-9 was the purchase by the Village of McGraw of 17 acres of land. The land is used as a buffer to an existing wellhead located upon other land owned by the Village of McGraw. Again, this parcel was not purchased for the potable water on the site, thus it does not indicate a premium placed on an alleged potable water supply.
The claimant has failed to establish through Peatfield’s appraisal that he is entitled to an estimated enhancement for the potential potable water supply.
The court has viewed the subject property.
After carefully considering the proof, the court finds that the subject had a fair market value of $55,000 as of January 17, 1995. Claimant is awarded $55,000 with interest at the statutory rate from the date of taking to February 8, 1995 (EDPL 514), and from the date of this decision to the date of the entry of final judgment and thereafter pursuant to CPLR 5003.

. Claimant’s appraiser testified that his opinion as to the value of the subject would not be changed even if this sale were not considered.

. The Village called Thomas P. Decker, an environmental geologist, to testify as to the lack of "uniqueness” of the potable water supply on the subject. The testimony of Mr. Decker was considered by the court primarily as to the geology of the area and not to any issue of value of the subject.